JOHN PATNOTE v. JOB SANDERS.

*Master and Servant.   Contract.   Tender.   Damages.*

Where a laborer leaves his employer before his term of service has expired and without his employer's consent, and the employer, although insisting that he does not admit his liability, offers to pay him for his labor at the rate he would have received if he had labored until the end of the time agreed upon, or makes a tender of the amount due at that rate, he (the employer), both by his offer of payment and by his tender, waives the forfeiture of the wages for the services performed. But the laborer is not entitled to recover more than the contract price, in any view of the case, unless he had good cause for leaving.

The laborer, having left voluntarily, although by the consent and acquiescence of the employer, can recover only *pro rata* on the basis of the contract price; and the employer, under the circumstances, is not entitled to recover damages.

The tender was intended to be in accordance with the above rule of compensation, but by mistake was ten dollars less than the amount due under the rule. *Held*, that it must be regarded as the mistake and misfortune of the employer, and could not have the same legal effect on the rights of the parties in the case, that it would have had if it had been a tender of the amount intended.

BOOK ACCOUNT. The auditor to whom the case was referred reported as follows, viz.:

"The plaintiff presented an account in which he charged to the defendant $78, for 39 days' work at $2 per day.

"The plaintiff on or about the 19th day of June, 1865, made a contract to labor for the defendant for four months at $25 per month, then following, at the ordinary work performed upon the farm. The plaintiff, who is a Canadian, represented to the defendant that he was 'a good hand.' He also represented that he was 'a good wood-chopper.' It was expected by the parties, that the plaintiff was to go at work chopping, after hot weather was over and haying and harvesting were done. When the haying was about over, but the harvesting had not begun, on or about the 29th or 30th of July, the defendant proposed to the plaintiff and another hand there at work, to grind the axes and go into the woods and find a place to chop. To this the plaintiff objected, declining to do so, saying that he was not bound by his contract to do so, and that he was not to begin chopping at this time. The auditor did not find that the defendant at this time intended to set the plaintiff at work. chopping and keep him at it *continuously*, but was of the opinion, and so found, that the plaintiff might have supposed so and therefore declined to enter upon that work. After some talk between them, the defendant insisting that the plaintiff should go to work in the woods chopping, and the plaintiff declining to do so, the plaintiff said he should quit. The defendant proposed to settle with the plaintiff and pay him something for his work, but did not admit that he was holden by the contract to do so. No settlement was agreed upon and nothing was paid, but the defendant offered to pay for one month and a half, if the plaintiff would accept it. Under the above circumstances, it was claimed before the auditor, that the plaintiff was entitled to recover *by the day* for his work at $2 per day. If the court should be of the opinion that the plaintiff was entitled, under the statement above made by the auditor, to recover *by the day*, the auditor would allow the account by the day at $1.50, which, as computed by the auditor, amounts to $58.50. If the court should be of the opinion that the plaintiff was entitled to recover *by the month* irrespective of the contract price, then the auditor would allow the same at $30 per month, and the same is computed at $45. In case the plaintiff should recover merely the contract price, he would be entitled to recover $37.50. The plaintiff placed his account in the hands of his attorney, Mr. Wilson, for collection. Mr. Wilson presented the account to the defendant, and the defendant, although he denied that he was under any legal liability,

said that he was willing to pay the plaintiff for one month and a half at $25 per month, as agreed upon in the contract. He further said that he had not the money with him but would obtain it. Mr. Wilson said he would advise his client to take it. This was at Mr. Wilson's office. At this last mentioned time there had been a writ made out on said account, but not served, and it did not appear that the defendant then knew it. After that, on the same day, Mr. Wilson went to Mr. Gilman's office to do some business with Gilman, and the defendant, having obtained some money, went there and tendered to Wilson the sum of $27.50, which sum Wilson took and placed in an envelope, and sealed up the same; and it was produced and opened at the justice trial. The auditor found that Wilson counted this money at the time the defendant made the tender, and told the defendant that there was $27.50 ; but he did not call the defendant's attention to the fact that, if he (the defendant) intended to tender the amount of wages for one month and a half at $25 per month, as the defendant said he desired to do, he (the defendant) had made a mistake of $10. Mr. Wilson intimated to the defendant that he would endeavor to have the matter arranged without suit. It was strongly insisted before the auditor, that the tender was in fact the sum of $37.50, but the auditor did not so find. The auditor found that the defendant intended to tender $37.50, the amount of the contract price at $25 per month, and supposed that he had done so. The auditor found, also, that, at the time the defendant gave to Wilson, the attorney, the money, he (Wilson) said : ' Do you intend to let me have all this ?' but it did not appear that this was after he (Wilson) counted it. To this the defendant replied either that he wanted to tender one and a half month's wages or $37.50. The amount put upon the table, was more than the amount actually tendered, and Wilson paid back by making change to Sanders, the defendant. The auditor found that both Wilson and Sanders had to do with making the change to Sanders, but the balance, whatever it was, was paid by Wilson to Sanders.

" The auditor found that there was testimony tending to show that the plaintiff was not an ordinary hand at all kinds of farm work; and there was, also, testimony tending to show that he was an average hand, and the auditor found that he could earn and did earn, in his opinion, the amount stated by him in his report on file. The day was not a good hay-day, and the defendant testified that it was Saturday, and he set his hands at other work than haying.

" The plaintiff was an experienced wood-chopper. The plaintiff said he was a good wood-chopper, and that he had worked at that business before he hired out to the defendant, and he also said

-that he went to work at that business after he left, and the auditor did not find there was any evidence offered to the contrary; he therefore so found.

" The defendant would have been compelled to pay another man, doing the same kind of work, thirty dollars per month, for the month next following the time the plaintiff left; and he therefore -allowed the defendant $5. As to the remaining time, the auditor was of the opinion that the wages would have been about the same as those agreed upon by the parties."

The defendant insisted that, upon the facts found and reported by the auditor, the whole of the claim of the plaintiff should have been disallowed by him, and that, on those facts, the judgment in the county court should have been for the defendant; but the court, at the December term, 1867, MARCY, Assistant J., presiding, held otherwise, and rendered judgment for the plaintiff for the sum of seventeen dollars and fifty cents, and for the plaintiff to recover his costs; and the defendant excepted on the ground that judgment should have been for the defendant, and, if for the plaintiff, it should have have been for a less sum.

*Hunton & Gilman*, for the defendant, maintained that the proposition made to the plaintiff, that he should go to chopping, was reasonable and within the contract; that, under the circumstances, it was ordinary farm work; that the plaintiff had no reason to suppose he was to be kept at that work continuously; that the report does not show the plaintiff had good cause for leaving, but the contrary; that the contract was entire for four months, and the plaintiff had no right to recover for the work he had done. *Mullen* v. *Gilkinson*, 19 Vt., 503; *St. A. S. B. Co.* v. *Wilkins*, 8 Vt., 54; *Hair* v. *Bell*, 6 Vt., 35.

The offer to pay by the defendant, does not change the rights of the parties, because, when he made the offer, he insisted that he was not bound to pay anything. The same is true as to the payment made. If the offer made the defendant liable, it was only for the contract price, and the payment made should be allowed at that sum.

The act of making change and the words of the attorney were calculated to mislead; without them the defendant would proba-

bly have discovered that it was not as much money as he supposed. The money was as and for $37.50, and was received as and for that sum. The plaintiff is bound by the act of his attorney, and is not at liberty to claim it was a less sum. *Pickard* v. *Sears et al.*, 33 E. C. L., 115; *Cady* v. *Owen*, 34 Vt., 598.

The plaintiff should be allowed, at most, only the contract price. The damages to the defendant for the plaintiff's leaving, found by the auditor, should have been allowed by the county court.

*James J. Wilson*, for the plaintiff.

The auditor finds that the plaintiff's labor was worth to the defendant $45, computing the same by the month, and he has received but $27.50.

The plaintiff had good cause to leave.   34 Vt., 106.

An offer by the defendant after the plaintiff had left his service, to pay the plaintiff the amount due him, at the rate of compensation fixed by the original contract, was a waiver of all claim of forfeiture or claim for damages. *Seaver* v. *Morse*, 20 Vt., 620.

Not objecting to the plaintiff's leaving, but offering to pay him *pro rata*, was in effect consenting thereto, and waives all claims for forfeiture or damage.  *Cahill* v. *Patterson*, 30 Vt., 592.

If the plaintiff had cause for leaving, he can recover what his labor is worth.   31 Vt., 162.

The tender of $27.50 conclusively admits every fact which the plaintiff would be obliged to prove in order to recover that sum. 1 Green. Ev., § 205.

The tender is an admission of the legality of the claim, and denies only the amount, which, being matter of fact, is concluded by the finding of the auditor.  *Woodward* v. *Cutter*, 33 Vt., 49; *Dyer* v. *Ashton*, 8 E. C. L., 4; *Stoveld* v. *Brewin et al.*, 4 E. C. L., 426.

The opinion of the court was delivered by

PECK, J.   It appears that about the 29th of June, 1865, the plaintiff agreed to labor for the defendant for the term of four months thereafter, at the ordinary work performed on the farm,

with this further understanding that, after the hot weather was over and haying and harvesting done, the plaintiff was to go to work at chopping. After laboring a month and a half, the plaintiff left the defendant's employ.

The first question is whether the plaintiff left under such circumstances that his leaving operated as a forfeiture of his wages for the time that he labored. The auditor has not found whether the plaintiff had just cause for leaving or not, nor has he found whether or not he left by the defendant's consent. He has stated, however, what transpired on the occasion of his leaving. The court, therefore, must necessarily make such reasonable inferences as the facts found by the auditor warrant, so far as necessary to the decision of the case. Under the contract, it was not expected that the plaintiff would be set to chopping as a constant business so early in the season as when the defendant directed him to go to chopping, on which occasion he left. The plaintiff then put his refusal to chop expressly on that ground. But there was nothing in the contract that would justify the plaintiff in his refusal, if only required to chop that day or temporarily, if the convenience of the defendant's business required it; especially as it was not weather proper for haying, as the auditor finds. But, as we understand the report, the plaintiff supposed the defendant, by that direction, designed to have him then commence chopping as a steady business; but the auditor finds that the defendant did not so intend it. It does not appear, however, that the defendant so informed the plaintiff. There seems to have been a misunderstanding between them on this point, and it resulted in the defendant's insisting on this direction, and the plaintiff's telling him he should leave. But it is not necessary to say whether the plaintiff was justified in quitting the defendant's employment, except in reference to the amount of his compensation, because, whether he was justified or not, we think it resulted in the defendant's assenting to it. If the defendant had been desirous to have the plaintiff remain, he probably would have explained to him that the chopping on that occasion was designed to be only temporary. But the report shows that, after the plaintiff said he should quit, the defendant proposed to settle with him and pay him something for his

work; but the auditor says he did not admit that he was holden by the contract to do so. The auditor does not say that the defendant insisted to the plaintiff, that he was not liable, but only that he did not admit his liability. The auditor then adds: "No settlement was agreed upon and nothing was paid, *but the defendant offered to pay for one month and a half, if the plaintiff would receive it.*" This, we must intend, was an offer to pay at the contract price. This is sufficient evidence that the defendant assented to and acquiesced in the plaintiff's leaving. If so, it is a waiver of the forfeiture of the wages for the services performed; especially as the offer was to pay for the whole service rendered.

But even if the plaintiff did not leave by the defendant's consent, the offer to pay for the whole service at the contract price, is a waiver of the forfeiture. So is the tender to Wilson, the plaintiff's attorney. It is true that to Wilson he tendered but $27.50, but the case shows that he intended to tender $37.50, and supposed he did so, but made a mistake in the amount. This is just as strong evidence of an intent not to insist on the forfeiture, as if he had tendered the $37.50, as he supposed at the time that he did tender. It is insisted on the part of the defense, that this tender can have no such effect upon the defendant's right to insist on the forfeiture, because, in the previous interview between the defendant and Wilson, when the defendant offered to pay for one and a half month's wages at the contract price, which is just $37.50, and Wilson told him he would advise the plaintiff to take it, he accompanied the offer by a claim on his part that he was not liable. What effect that might have upon that offer in reference to this question, it is not necessary to decide, as no such claim accompanied the subsequent tender. *Seaver* v. *Morse*, 20 Vt., 620, and *Cahill* v. *Patterson*, 30 Vt., 592, in principle are decisive of this question.

The question then is, what is the rule of compensation which shall govern? The plaintiff claims to recover on a *quantum meruit* independent of the contract. On this basis, the auditor finds the plaintiff would be entitled to recover more than the contract price, and fixes the amount. Whether the auditor bases his finding on the ground that the labor for the whole four months was

worth more than the stipulated price, or on the ground that the plaintiff labored that portion of the time when his services were the most valuable, he does not tell us.    The plaintiff is not entitled to recover more than the contract price, in any view of the case, unless the facts show that he had good cause for leaving; and this we can not say, from the facts reported.    The plaintiff, having left voluntarily, although by the consent and acquiescence of the defendant, can recover only *pro rata* on the basis of the contract price.    Nor is the defendant entitled to a deduction of the five dollars damages which the report shows he sustained by reason of the plaintiff's leaving his employ.

It is insisted by the defendant, that, upon the facts reported in relation to the tender of the $27.50, and which the attorney received, the plaintiff is entitled to stand in no better condition than if the $37.50 had been tendered and received.    But the mistake in the sum must be regarded as the mistake and misfortune of the defendant.    There is nothing in this that can change the legal rights of the parties.    There is no legal ground upon which we can say that the plaintiff shall account for the $10, which he has not received, and which the defendant still retains.

The judgment of the county court for the plaintiff is reversed, and judgment for the plaintiff for $10 damages, and interest on that sum from the commencement of the suit.