### TENNENT–STRIBLING SHOE CO. v. ROPER.

(Circuit Court of Appeals, Fifth Circuit. May 23, 1899.)

No. 743.

**1. SUNDAY CONTRACT—VALIDITY AS TO THIRD PARTIES—EFFECT OF RATIFICATION.**

A debtor cannot defeat the collection of a valid debt by an assignee, on the ground that it was sold and assigned to him on Sunday, in violation of the laws of the state, where the transfer was subsequently ratified by the assignor, and became binding between the parties to it; and such ratification renders it valid from the date of the actual assignment for the purpose of an attachment thereon procured by the assignee on that day.

**2. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.**

Where an action in a federal court is based on several accounts, exhibited with the declaration, the amount of the accounts in the aggregate is the amount in dispute, and, when it exceeds $2,000, the court is not deprived of jurisdiction, though the defendant successfully attacks the validity of the transfer of one of the accounts to the plaintiff, reducing the amount remaining below the jurisdictional limit.

In Error to the Circuit Court of the United States for the Northern District of Mississippi.

Rice T. Fant, for plaintiff in error.

James Stone and C. L. Sively, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. 1. This is a suit for $2,336.64, begun by attachment by the Tennent-Stribling Shoe Company, a corporation chartered under the laws of Missouri, against W. E. Roper, a citizen of Mississippi. Of this sum $920.90 is an account which the plaintiff in error holds against the defendant in error for goods sold to him. The remainder of the sum sued for is composed of accounts which were held against the defendant in error by citizens of states, or by corporations organized and chartered in states, of which neither the plaintiff in error nor the defendant in error was a citizen. The assignee of such claims, if in the aggregate they reach the jurisdictional amount, can sue on them in the United States courts. Chase v. Roller-Mills Co., 56 Fed. 625; Bowden v. Burnham, 8 C. C. A. 248, 59 Fed. 752; Bergman v. Inman, 91 Fed.

293. Of the total sum sued for, $644.96 is an account against the defendant in error and in favor of Wm. R. Moore & Co. The other several accounts were transferred, in writing, to the plaintiff in error for a valuable consideration on the "20th of November, 1897." There is no controversy in the case, as shown in the evidence, except as to the transfer of the Wm. R. Moore & Co. account. That account is transferred in this language:

"Transfer of the account of Wm. R. Moore & Company. Nov. 20, '97. For value received, we hereby sell, transfer, and assign unto Tennent–Stribling Shoe Company, of St. Louis, Mo., the within account versus W. E. Roper.
                                        Wm. R. Moore & Company."

The attachment suit was brought on these several claims November 21, 1897. This was on Sunday, but the statutes of Mississippi permit the issuance and levy of attachments on Sunday. Ann. Code, § 139. A declaration was duly filed in the case. Subsequently, on the 8th of December, 1897, the defendant in the suit, W. E. Roper, moved the court to dismiss the case "because this court has no jurisdiction; because, at the time of suing out this attachment, defendant was only due or owed to the plaintiff the sum of $920.90." The case was tried and disposed of on this motion. The bill of exceptions shows that the "defendant, to sustain said motion to dismiss, by his counsel offered in evidence the declaration in attachment, with bills of particulars attached thereto, and the transfers on the bills of particulars." We have already given the contents of the transfer of the Wm. R. Moore & Co. account, dated November 20, 1897. The defendant then offered the evidence of one witness, O. C. Armstrong. His examination related alone to the transfer of the Wm. R. Moore & Co. account. Witness was a member of the firm of Wm. R. Moore & Co. To understand the case, it is necessary to give the material parts of Mr. Armstrong's statement:

"Q. What time did you actually and in fact close the sale of your firm's accounts with plaintiffs? A. That was actually done, I would say, about 4 o'clock Sunday evening, November 21st. Q. Was any part of the purchase money paid before Monday, the 22d, or on Monday, the 22d? A. No, sir. Q. Had any memoranda in writing been signed before or on Monday, the 22d of November? A. Any memoranda in writing? Q. Yes, sir,—evidencing the sale. A. No, sir. Q. I believe you stated in your direct examination that your firm owned the account after it was transferred to the plaintiff up until Monday, November 22d. Please explain what you mean when you state that your firm were the owners of the account until that day. A. When I made that statement, I forgot a telegram that passed Sunday evening, and I now remember that it did secure it Sunday evening. I was merely mistaken. Q. Then the sale was made on Sunday, was it not? A. Yes, sir. Q. When did you first deliver your account to the agent of the Tennent–Stribling Shoe Company, or the plaintiffs? A. I don't know, sir. It was done as soon as the clerks could make it out and put it in order. Q. That was some time after the 22d of November, was it not? A. Yes, sir."

On cross-examination, Mr. Armstrong testified that on the evening of November 20th he went on the train with Mr. Fant, the attorney for the plaintiff in error, to Byhalia; that the trip was made to investigate W. E. Roper's affairs; that witness had with him an itemized statement of the account of Wm. R. Moore & Co. against W. E. Roper; that it was on that evening agreed that the plaintiff in error could buy the account for 50 cents on the dollar

(witness referred to this agreement as an "option"); that the option was finally closed on Sunday evening.

On this evidence, the court granted the motion, dismissed the cause, taxed the plaintiff with the costs, and ordered that certain moneys in court (the proceeds of the sale of part of the attached property) be paid to the defendant, W. E. Roper. The several assignments of error are directed to the action of the court in dismissing the case and entering the judgment described.

It is claimed by the defendant in error that the transfer of the Wm. R. Moore & Co. account was made in violation of the Sunday laws, and that such transfer is therefore void. It is a misdemeanor in Mississippi to engage in work on Sunday. Ann. Code, § 1291. Mr. Armstrong testifies that he and the plaintiff in error's attorney had a conversation on Saturday about the sale of the claim. It seems that the effect of the conversation was that the plaintiff in error was to have the account, if he wished to take it, at 50 cents on the dollar. This agreement is referred to by the witness as an "option." On Sunday there was evidently further communication on the subject, and on direct examination the witness says, in effect, that the account was not drawn off till some days later, probably about the 22d of November, and that the sale was not completed till 4 o'clock Sunday afternoon, November 21st. But, on cross-examination, the witness says that he had the account with him itemized on Saturday, the 20th, at the time of the conversation with plaintiff's attorney. The account offered in evidence is transferred on "November 20th." If this is not the true date of the written transfer, no date is given by the evidence. We are not unmindful of the fact that the witness holds to the proposition that the sale was not concluded, as he understood it, till Sunday afternoon; but the date of the written transfer would indicate that the telegraphic correspondence on Sunday was to ratify what was already done. If it be conceded that the transfer was made on Sunday, we cannot agree that the defendant in error can take advantage of it. The action is not brought on the contract of assignment. The defendant in error is not a party to the contract of assignment. His contract was with Wm. R. Moore & Co. to pay the account. That account, with the other claims, is now the property of the plaintiff in error. It sues on the account. The assignment of it is the means by which it became the owner of it. If it was assigned to it on Sunday, if the assignor afterwards ratified the assignment, and the assignee claims under it, it is binding between them. A third person, not a party to the contract of assignment, should not be permitted to avoid the payment of the debt by pleading the illegality of a contract that can be and is ratified by the parties to it. The defendant in error could not be again made to pay it if this assignee recovers it. No one else claims, or can successfully claim, the debt. A member of the firm of Wm. R. Moore & Co. was in court as a witness, ratifying and approving the assignment. If the defendant in error can defeat the collection of the claim of the plaintiff in error, then no one can collect it. As both the assignor and the assignee are satisfied with their contract, and the same having

become executed by the payment of the purchase money and the delivery of the account with the written assignment, the defendant in error, who is not a party to it, and whose contract is not subject to any infirmity, should not be permitted to appeal to the Sunday laws to avoid the payment of his own legal obligations. The intention with which these laws were enacted will be better promoted by not permitting their use to be extended to defeat just obligations not contracted on Sunday. A third person, not a party to the contract of assignment, cannot dispute its validity on the ground that it was made on Sunday. Richardson v. Kimball, 28 Me. 463; Foster v. Wooten, 67 Miss. 540, 7 South. 501; Adams v. Gay, 19 Vt. 358.

2. The following is a statement of the claims sued on, as appears by the record:

| | |
|---|---:|
| Exhibit A, Tennent-Stribling Shoe Company | $ 920 90 |
| Exhibit B, Wm. R. Moore & Co | 644 96 |
| Exhibit C, Memphis Grocery Company | 488 35 |
| Exhibit D, Goodman Bros | 129 75 |
| Exhibit E, Marks & Fader | 152 68 |
| Aggregate | $2,336 64 |

The plaintiff is the original owner of the first account, and the others are transferred to it as before stated. The affidavit is made to secure an attachment to collect these claims, the writ is issued and levied, and declaration filed, each showing an amount, in the aggregate, within the jurisdiction of the circuit court. If it be conceded that the evidence in the case shows that the plaintiff, for some reason, cannot maintain its title to, or right to recover on, one of the accounts, and that deducting that account from the aggregate of the amounts sued for reduces the sum below $2,000, does such evidence defeat the jurisdiction of the circuit court? The circuit court so held. Concluding that the plaintiff's title to the Wm. R. Moore & Co. account was defective, and deducting that sum from the aggregate, it reduced the amount for which plaintiff could obtain judgment below $2,000, and the court therefore dismissed the case for want of jurisdiction. Unless the matter in dispute in a case exceeds $2,000, the court is without jurisdiction. In Lee v. Watson, 1 Wall. 339, the court said:

"By 'matter in dispute' is meant the subject of litigation,—the matter for which the suit is brought,—and upon which issue is joined, and in relation to which jurors are called and witnesses examined. In an action upon a money demand, where the general issue is pleaded, the matter in dispute is the debt claimed, and its amount as stated in the body of the declaration."

In discussing the question of appellate jurisdiction, in Hilton v. Dickinson, 108 U. S. 166, 2 Sup. Ct. 424, the court held: "The amount stated in the body of the declaration * * * must be considered in determining the question of jurisdiction." Cases of course do arise when the amount stated in the declaration would not govern, as, for example, a suit for $15,000 damages for the breach of a $1,000 bond. The amount of the bond would be the limit of the recovery, and so the extent of the matter in dispute. In an action, however, on accounts exhibited with the declaration, the amount of the accounts

in the aggregate is the amount in dispute. The fact that some defense may be made, or is, in fact, made, which will make the recovery fall below the jurisdictional amount, does not defeat the jurisdiction of the court. It occurs in the practice that judgments are sometimes entered for a less sum than suit could have been brought for. Statutory provision as to costs is made for such cases:

"When, in a circuit court, a plaintiff in an action at law originally brought there * * * recovers less than the sum or value of five hundred dollars, exclusive of costs, in a case which cannot be brought there unless the amount in dispute, exclusive of costs, exceeds said sum or value, * * * he shall not be allowed, but, at the discretion of the court, may be adjudged to pay, costs." Rev. St. U. S. § 968.

This statute, at least, shows that the congress does not so construe the statutes conferring jurisdiction on the court that the same will be defeated, if, by defense, the amount claimed in the action should be reduced below $2,000. In Hardin v. Cass Co., 42 Fed. 652, a suit was brought for a sum exceeding the jurisdictional amount. The statute of limitations was successfully pleaded as to part of the claim. This part of the suit being defeated, the amount left collectible was less than the jurisdictional amount. The defendant insisted that the case should be dismissed. The court, however, granted judgment for the remainder of the claim, although it was for less than $2,000. The case of Green v. Liter, 8 Cranch, 106, was a suit for a large tract of land, alleged to exceed the value which then fixed the jurisdiction of the court. The recovery was for less in value. Mr. Justice Story, delivering the opinion of the court, said:

"As to the first question, we are satisfied that the circuit court had jurisdiction of the cause. Taking the eleventh and twentieth sections of the judicial act of 1789 (chapter 20) in connection, it is clear that the jurisdiction attaches when the property demanded exceeds $500 in value; and if, upon trial, the demandant recovers less, he is not allowed his costs, but, at the discretion of the court, may be adjudged to pay costs."

See, also, Levinski v. Banking Co., 92 Fed. 449.

The judgment of the circuit court is reversed, and the cause remanded, with direction to reinstate said cause on the docket, and to proceed in conformity with this opinion; and it is so ordered.