## HEFFNER v. GWYNNE-TREADWELL COTTON CO.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1908.)

No. 2,686.

1. COURTS—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

Whether a suit in a federal court involves the necessary jurisdictional amount is not a local question controlled by the statutes of the state or the rulings of its Supreme Court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 901.

Jurisdiction of Circuit Courts as dependent on the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

2. SAME—SEPARATE OBLIGATION.

In an action in a federal court on several notes, the jurisdictional amount in controversy is the aggregate of the judgment prayed for.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 890 - 897.]

3. FACTORS—CONSIGNMENT OF GOODS FOR SALE—DIRECTIONS—LIEN.

Where there is a simple consignment of goods to a factor for sale on commission, the directions of the consignor, communicated either at the time or before sale as to when or how the goods should be sold and the proceeds applied, must be respected by the consignee who holds no other interest in the property as such, but if the factor has advanced money for the purchase of the goods consigned to the extent of his advancements or liabilities incurred on account of the goods, he acquires a special interest therein in the nature of a lien for his indemnity in the absence of a special contract varying the right, in which case neither the consignor, nor any one claiming under him, can maintain an action against the factor to recover the property or its proceeds without tendering the amount due him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Factors, §§ 70, 71.]

4. SAME.

If a consignor of goods to a factor contemporaneously with an advancement by the factor and the consignment gives the factor directions respecting the time and manner of sale which are assented to by the factor's acceptance of the goods, he may not disregard such directions or condition in selling the goods for his reimbursement, provided the consignor stands ready or offers to reimburse the factor for his advances and liabilities.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Factors, §§ 23-25.]

5. SAME—SUBSEQUENT DIRECTIONS.

Where a consignment of goods to a factor for sale on which the factor has made advancements is received without directions as to the time or manner of sale or disposition of the proceeds, the factor may hold and dispose of the goods in the customary method of trade and reimburse himself out of the proceeds for his advances and liabilities and commission, the consignor being without power by any subsequent direction to the factor or conditions imposed to suspend or affect the factor's lien or right of sale to the extent necessary for his reimbursement and compensation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Factors, §§ 23-25.]

6. SAME—APPLICATION FOR PROCEEDS—SOLVENCY OF PRINCIPAL.

Where a factor without any new consideration assented to his consignor's demand that if he sold the goods on which advances had been made the proceeds should be applied on certain notes held by the factor against the consignor and not on the consignor's open account such assent by the factor was subject to the implied condition that the consignor should keep up the required margins and continue solvent and she having

become bankrupt the factor, after notice, was entitled to sell the goods for the best market price and credit the proceeds against the open account and commissions before applying any part thereof to the notes.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Prior to August, 1905, including 1904, the copartnership firm of Stewart-Gwynne & Co. were engaged, at Memphis, Tenn., in business as commission merchants dealing in cotton. Mrs. E. E. Heffner (the wife of the plaintiff in error, hereinafter, for convenience, designated the defendant) was a feme sole trader, doing business at Carlisle and Hickory Plains, Ark. She engaged extensively in buying cotton in the region of her stores, shipping it to said Stewart-Gwynne & Co. to sell for her as a factor. As a rule, the money for the purchase of cotton by her was furnished by said Stewart-Gwynne & Co. Her habit was to give to her vendors checks on said firm for the respective purchases. As sales were made by this firm of the cotton so consigned they gave credit on the book account kept with Mrs. Heffner, sending her notices from time to time of the state of the account. On April 11, 1905, she and the defendant executed to said firm their note for $1,000 due December 15, 1905, on account between her and this firm. In August, 1905, the defendant in error (hereinafter, for convenience, designated the plaintiff), was organized as a corporation by members of said copartnership concern, which took over the commission cotton business of the firm of Stewart-Gwynne & Co., an assignment of the said $1,000 note, and the account between it and Mrs. Heffner, and continued the business with her as theretofore. On August 22, 1905, Mrs. Heffner and the defendant executed to the plaintiff certain other two notes each for $1,000, one due December 15, 1905, the other January 1, 1906. These notes were given to be discounted by the plaintiff and the proceeds entered on the book account between it and Mrs. Heffner. She continued thereafter to buy and consign cotton to the plaintiff and drew drafts on it in favor of the parties from whom she bought. This business was so proceeded with until the fall of 1905 and winter of 1905 and 1906, when the aggregate of her account reached $14,866.08, and the indebtedness of said notes of $3,000. On November 11, 1905, the plaintiff wrote Mrs. Heffner suggesting that, from the amount of the drafts she was drawing, she must have a good lot of cotton which she had not shipped to it, and requesting that she make more shipments. Also, calling attention to the fact that the note for $1,000 would be due December 1st, which she was expected to promptly pay. To this letter, she replied on the 13th inst., suggesting that if the plaintiff did not wish her to draw for more cotton to let her know, stating that she would get cotton enough through the Hickory Plains store to pay the notes. On the 13th of November, 1905, plaintiff acknowledged the receipt of 22 bales of cotton, stating that the open account shows a debit against her of $11,116.96 and that it wanted the cotton from the Hickory Plains store, as the advances were made to control cotton shipments. On November 14, 1905, the plaintiff advised her that it had paid drafts for her amounting to $1,399.86, which increased the open account of her indebtedness to $12,516.82 against 234 bales of cotton, stating that she should send more bills of lading and less drafts; that if she wished to continue to hold the cotton, she must send good shipments without any drafts, or make cash remittance. "In other words, we must have a margin. We do not want to stop your operations but you must not ride a free horse to death." Again, on the 16th of November, the plaintiff wrote Mrs. Heffner, stating that they did not object to her drawing on it for four-fifths of the value of the cotton shipped, but that she was drawing for the full price of every bale she bought and that it expected her to carry at least one-fifth of the cost of the cotton; that her open account showed a debit of $14,016.55 against shipments of 251 bales of cotton. "You see we are carrying more than our share, and we shall expect you now to send us papers for good shipments against which there are no drafts, and in this way increase our margin." On the 22d of the month she shipped 12 bales of cotton, and in a letter said she would forward in a few days some more marked "H," which meant from Hickory Plains, and that she desired to get enough cotton to the plaintiff by

the 1st of December to insure the payment of the note then due, and directed that the 16 bales the plaintiff then had and the next shipment marked "H," go toward the payment of the note, but not to sell it until she ordered. On November 28, 1905, the plaintiff notified her that it had refused payment of two drafts drawn by her amounting to $241.85, and that she did not have cotton enough in its hands to justify paying out any more; that her open account showed an indebtedness of $14,474.20, against which they held 264 bales of cotton, 22 of which were re-packs, regretting that she had not sufficient cotton on hand to protect her drafts. On the 30th of the same month, she telegraphed plaintiff, asking if it would honor drafts on receipt of bill of lading that morning, to which the plaintiff answered it would, and on the same day wrote her that the note for $1,000 was due, and that it must insist upon her having the cotton bales in its hands promptly to cover the same. On the 19th of December, 1905, the plaintiff wrote Mrs. Heffner, again calling her attention to the state of the account; that she had shipped 270 bales of cotton against which she had drawn on open account $16,677.22, which would not cover the amount of the open account; that the first $1,000 note due December 1st, had not been paid, and the note of $1,000 would be due January 1st. The letter further stated: "We have been promised cotton from Hickory Plains to meet these notes at maturity, but it has not appeared. We dislike to enter proceedings on this past due paper, but must insist on your immediate attention to both the account and the past due notes, together with the one maturing January 1st, 1906."

On the 26th of December, the plaintiff wrote that her reply was not satisfactory, and that it must insist on further margin from her immediately, or that it would put the cotton on the market and sell it. On the 26th of December it telegraphed her: "Compliance at once with our letter of the 26th is necessary." To this the defendant wrote in her name begging that the cotton be held in prospect of advancement, and that she or he would call to see them at Memphis. On the same day, in another letter, she stated to the plaintiff that the understanding between them was that the cotton or any part of it should not be sold unless ordered by her, and that if they did sell the cotton against her protest, the first money arising from the sale should be applied to the payment of the three notes held by it against her and the defendant. To this, the plaintiff replied on the 29th of December, stating that it was aware of its rights and position in the premises, directing her to refresh her memory by reference to various letters sent her, reminding her that she had promised either shipments or remittances to reduce the account, which she had not complied with; that she had done nothing toward complying with the request to take care of the past-due paper, and they hoped she would not fail to protect the one due January 1st. It consented to hold the cotton, pending the promised interview of the next week; that it would not like to forward the notes for collection, but insisted that they have prompt attention. It seems that instead of the promised visit of Mrs. Heffner, the defendant's attorneys visited the plaintiff, and, on return to their residence, at Lonoke, Ark., they wrote the plaintiff, stating that it was impossible for Mrs. Heffner to put up $500 at that time as a margin, and that the defendant declined to execute notes suggested, and they must hold the cotton until directed to sell by her. On the 12th of January, the plaintiff replied, stating that "the compliance with our repeated requests to furnish us with additional margin have so far been refused. We now feel at perfect liberty to sell the cotton and appropriate the proceeds against the drafts drawn against such shipments. We have advices from her as stated to you that all her drafts have been drawn exclusively against these shipments. We have no intention of sacrificing the cotton, and still trust that in the near future she will comply with our requests as to the margin, and enable us to meet her views as to the further holding of the cotton." The response made to this insistence by Mrs. Heffner was her going into bankruptcy on the 8th day of March, 1906. After this, the plaintiff sold the cotton amounting to 270 bales and applied the proceeds thereof to the open account between them, which left the sum of $207.39, which it placed as a credit on the note due December 1, 1905. The plaintiff proved up the balance due on said notes in bankruptcy against the estate of Mrs. Heffner, on which a dividend of $113.80 was paid. This suit was instituted

in August, 1906, to recover the balance on said notes. The defendant pleaded in his answer that he signed said notes as surety for Mrs. Heffner, and that they were paid by the shipment of cotton by Mrs. Heffner; the proceeds of which were to be applied to the payment of said notes, and that the market value of the cotton shipped was greater than any debt claimed by the plaintiff against either himself or Mrs. Heffner. At the conclusion of the evidence, the only request for a declaration of law made by the defendant was as follows: "That Mrs. Heffner had the right, under the law, to apply the proceeds of the cotton to the payment of the note sued on and as she directed said proceeds to be so applied, the notes were paid, and the plaintiff cannot recover in this action." This was refused, and the defendant excepted.

Thereupon the court, at plaintiff's request, instructed the jury to return a verdict in favor of the plaintiff in the sum of $1,793.97.

Trimble, Robinson & Trimble and J. H. Harrod, for plaintiff in error.

N. W. Norton, for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge (after stating the facts as above). Counsel for the plaintiff in error in their brief question the jurisdiction of the Circuit Court over the subject-matter of the suit. Their contention is that each of the notes sued on constitutes a separate cause of action, each of which is less than $2,000, and the sum of them cannot be employed to make out the required excess over $2,000. In support of this proposition decisions of the Supreme Court of Arkansas are cited on the question of the amount in each separate cause of action to give the court jurisdiction. This is not, however, a local question, controlled by the statute of the state, or the rulings of its Supreme Court. It pertains to a subject-matter of procedure exclusively within the federal jurisdiction, in which it is well settled that in the action of assumpsit, like that of an action on several notes, bonds and the like, the requisite jurisdictional amount is the aggregate of the judgment prayed for. Edwards v. Bates County, 163 U. S. 269, 273, 16 Sup. Ct. 967, 41 L. Ed. 155; Bowden v. Burnham, 59 Fed. 752, 755, 8 C. C. A. 248; Chase v. Sheldon Roller-Mills Co. (C. C.) 56 Fed. 625; Tennent-Stribling Shoe Co. v. Roper, 94 Fed. 739, 36 C. C. A. 455; Bergman v. Inman, Poulsen & Co. (C. C.) 91 Fed. 293.

The controlling question for decision on this writ of error is: Did the plaintiff below have the right to sell the cotton on hand in April, 1906, and apply the proceeds to the indebtedness of Mrs. Heffner on open account? We do not question the general rule of law that, ordinarily, where a debtor consigns goods to his creditor to be sold, he has the right to direct the time and manner of the sale and the application of the proceeds. By his acceptance of the goods, under such instructions from the consignor, the consignee takes them subject to such conditions, and may not disregard them without subjecting himself to consequent damages to the consignor.

Without taking the space to review the authorities pertinent to the question presented by this record, the correct American doctrine may be summarized, comprehensively enough, as follows: (1) Where there is a simple consignment of goods to a factor to be sold on commission,

the wishes or directions of the consignor, communicated either at the time of or subsequent to the shipment and before sale, as to when or how the goods shall be sold and the proceeds applied, must be respected by the consignee, who holds no other interest in the property as such. (2) If the factor advance the money for the purchase of the goods consigned, to the extent of his advancements or liabilities incurred on account of the goods, he acquires a special interest in the goods, in the nature of a lien, for his indemnity, in the absence of any special contract varying the right. In such case neither the consignor nor any one claiming under him can maintain action against the factor to recover the property or its proceeds without tendering what is due the factor. (3) If the consignor, contemporaneously with the advancement and consignment, give to the consignee direction respecting the holding or the time and manner of disposing of the goods, which are assented to by the factor's acceptance of them, the latter may not disregard the direction or condition in selling for his reimbursement, although he has made advancements or incurred liabilities on account of the goods, provided always, the consignor stands ready or offers to reimburse the consignee for such advancements and liabilities. (4) Where the factor has made advancements or incurred liabilities on account of the goods, and the consignment is made without any direction at the time as to the holding of the goods, or the time or manner of their disposition or of the proceeds, the intendment of law is that the factor is vested with authority to hold and dispose of the goods in the usual, customary method of the trade; and to reimburse himself out of the proceeds for such advancements and liabilities, as well as his commissions. And the consignor is without power or right by any subsequent direction to the factor or conditions imposed, to suspend or affect the lien of or right of sale by the factor, to the extent of his reimbursement and compensation. The Frances, 8 Cranch, 418, 419, 3 L. Ed. 609; Brown v. McGran, 14 Peters, 479, 10 L. Ed. 550; Field v. Farrington, 10 Wall. 141, 19 L. Ed. 923; Eichel v. Sawyer (C. C.) 44 Fed. 845, 850.

When the money was advanced and the Carlisle cotton was shipped to the plaintiff, it went under no special direction as to how or when it should be sold, or how the proceeds should be applied. But after the factor had become uneasy about the volume of Mrs. Heffner's checks, disproportioned to her shipments, and she was called upon to provide for the notes matured and maturing, and advised that she must increase her shipments or draw less, and time and again called upon to make good the margins, without compliance therewith she made demand that the cotton on hand be not sold without her order, with a further demand that if the plaintiff did sell, the proceeds should be first applied to the liquidation of the notes on which the defendant was surety. It is true that the defendant made acknowledgment of this letter, noting her request in such fashion that the law will impute to it acquiescence. Where such consent is founded upon no new consideration, the law, ever instinct with the spirit of justice, declares that it was impliedly conditioned with the understanding that "the consignor stands ready and offers to reimburse and discharge such advances and liabilities." Brown v. McGran, supra. In other words, to hold the crediting factor

to such assent, the consignor must keep up the margins and continue solvent. Hornsby v. Fielding, 10 Heisk. (Tenn.) 367; Davis v. Kobe, 36 Minn. 214, 30 N. W. 662, 1 Am. St. Rep. 663. When Mrs. Heffner, on her own petition, was declared bankrupt, she proclaimed to all the world that she could not redeem this cotton from her factor; and, after advising her of the purpose to do so, the plaintiff had the right to sell and reimburse itself for the moneys advanced and its commissions, subject only to the duty to her and her creditors of obtaining the best market price. Parker v. Brancker, 22 Pick. (Mass.) 40; Frothingham v. Everton, 12 N. H. 239; Commercial Nat. Bank v. Heilbronner, 108 N. Y. 439, 15 N. E. 701; Phillips v. Scott, 43 Mo. 86, 97 Am. Dec. 369; Howard v. Smith, 56 Mo. 314.

In awarding judgment in favor of the plaintiff for the sum of $1,-793.97, the Circuit Court found from the evidence that 18 bales of the cotton marked "H," shipped from the Hickory Plains store, were not bought by drafts drawn on the plaintiff, and it was shipped to be applied to the first notes. It therefore applied the proceeds of that cotton to the notes, which, together with the amount of the dividends collected from the bankrupt estate, left the balance as adjudged by the court. This application to the open account was warranted by the fact that the balance was not greater than the advancements made on the cotton sold by the defendant.

As the plaintiff acquiesced in this, and the defendant has no legal objection thereto, the judgment of the Circuit Court must be affirmed.