Argued at Pendleton May 4; affirmed May 31; rehearing denied
July 12; motion to recall mandate denied October 4, 1932

# WINCHELL *v.* PACIFIC FRUIT & PRODUCE COMPANY
### (11 P. (2d) 815, 14 P. (2d) 626)

See 11 R. C. L. 774 (4 Perm. Supp., 2995).
See 24 R. C. L. 874 (8 Perm. Supp., 5502).

*John S. Coke* of Portland (Griffith, Peck & Coke, of Portland, and Teunis J. Wyers, of Hood River, on the brief), for appellant.

*A. J. Derby,* of Hood River, for respondent.

CAMPBELL, J. On February 14, 1930, plaintiff, a fruit grower in Hood River county, entered into a contract with defendant, a Washington corporation engaged in the business of buying and selling fruit as a factor and broker.

The contract provided for the defendant making certain advances to the plaintiff in caring for and getting his fruit ready for market and for the repayment of these advances with 8 per cent interest. In addition to said contract and at the same time and as part of the same transaction, and as further security, for such advances, plaintiff executed a chattel mortgage in favor of the defendant covering all the fruit to be grown by him during the season of 1930. The contract gave the defendant the sole and exclusive agency for the sale of the fruit.

The parts of the contract material herein, are paragraphs 3, 17, and 18 thereof:

"3. Grower hereby employs Company as his sole and exclusive agent and factor to sell and market above described crop, upon the terms and conditions hereinafter set forth. Company accepts such employment and Grower agrees to pay and Company agrees to accept as compensation for marketing services, the sum of 10c per box * * *

"17. Grower agrees to repay to Company all sums of money advanced him by Company or expended by Company in Grower's behalf or becoming due from him to Company, with interest at the rate of eight per cent (8%) per annum from date of said advances until paid, and in the event the proceeds of sale of the above mentioned crop shall be insufficient to pay all sums in full, Grower agrees that he shall personally be liable for any deficiency remaining unpaid. All sums of money becoming due Company hereon shall become due and payable when said crop is harvested but in no event later than nine months from the date hereof, providing that if said crop should be destroyed, or if Grower should abandon said crop, * * * or if for any other reason Company shall deem itself imperfectly or insufficiently secured for the advances made hereunder, or if default be made in any of the terms and conditions of this contract, then all sums becoming due hereunder shall become due upon demand.

"18. Company agrees that it will at the time said goods are ready for shipment, stand ready to make Grower a cash offer to purchase all or any part of said goods, the acceptance of which offer shall be optional with Grower. No sale of said goods is to be made or consummated by Grower except through Company as Grower's agent. If Grower shall procure a purchaser for said goods, Company shall be put in communication with said purchaser, when it shall, subject to the other terms hereof, consummate said sale on behalf of Grower; * * *"

Plaintiff alleges that he thereafter found a buyer for the fruit (Duckwall Bros., Inc.) who agreed to buy at certain fixed prices which would have returned to plaintiff the sum of $15,884.03 net. In accordance with paragraph 18 supra, he informed the defendant of the name and place of business of the buyer, and the offer made for the fruit and requested it to consummate the sale to said purchaser. The defendant failed to take any steps to make the sale and long thereafter

sold the fruit to other parties and made returns and final payment thereof to plaintiff in the sum of $12,881.79. Plaintiff prays judgment for the sum of $2,952.24, as damages, that being the difference between the above-mentioned two sums.

Defendant in its answer admits the allegations of the complaint but denies that plaintiff put it into communication with said Duckwall Bros., Inc., or any other buyer who was willing and able to buy the fruit. It further alleges that it had advanced to plaintiff on said contract, prior to the time plaintiff claims to have produced a buyer, a sum in excess of $10,000 in accordance with the contract alleged in plaintiff's complaint. The reply admits the new matter in the answer.

The cause was tried to a jury who returned a verdict in favor of plaintiff for the full amount prayed for. Judgment was entered on the verdict and defendant appeals.

There is no dispute about the contract, the amount of fruit delivered, the sum paid by defendant nor the total amount net that the fruit would have brought if sold at the price that the buyer, claimed to have been produced by the plaintiff, offered.

Defendant, before answering, filed a demurrer to the complaint on the grounds that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled.

After the jury was sworn and the first witness called on behalf of plaintiff, defendant objected to the introduction of any evidence for the reason that the complaint did not state facts sufficient to constitute a cause of action, which objection was overruled.

When the testimony was all submitted, the defendant moved for a directed verdict, which motion was denied. Defendant thereupon requested that certain

instructions be given the jury, each one of which was simply an additional request for a directed verdict.

After judgment was entered, defendant moved for a new trial, which motion was denied. To each of these rulings defendant saved 'an exception. The errors complained of in each of the adverse rulings of the court are all raised in defendant's motion for a directed verdict.

■ The real controversy arises over what is a fair and just construction of the contract entered into between the parties. Every bailee of personal property must be governed in his action towards such property, by the particular contract of bailment under which he holds. It makes little difference whether he is called bailee, factor, agent, mortgagee in possession, or any other legal term that denotes such relationship.

The evidence clearly discloses that plaintiff opened up negotiations with Duckwall Bros., Inc., and was quoted the prices alleged in his complaint, that he brought this offer and knowledge of the place of the business of the prospective buyer to the attention of defendant and requested its manager to consummate the sale. This put the defendant into communication with an intending purchaser.

There is no testimony to the effect that defendant did not know who Duckwall Bros., Inc., was or that it was not fully informed as to the intending purchaser's responsibility and ability to buy and pay for said fruit at the prices quoted. Defendant made no complaint on these grounds.

Mr. Waterbury, the manager for and only witness on behalf of defendant, testified, in effect, that he was informed of the Duckwall Bros., Inc., offer but that "we expected more money for the fruit because we believed that Duckwall was a bear on the market at

that time," that he had consulted several others including his competitors and came to the conclusion that a better price could be obtained, "so it was firmly impressed in my mind that the fruit had a greater value than the prices that Duckwall was quoting at that time," that he had no recollection of the plaintiff ever making a demand that defendant sell to Duckwall. "I recollect an expression of his desire, but not an order or a demand." On cross-examination he remembered that Mr. Winchell "said he did not want to take chances and gamble on that crop." The gist of his testimony, according to his own story, is that he felt so sure of getting a better price than Duckwall Bros., Inc., offered that he overruled the "desire of plaintiff to sell at that offer," and made no effort to consummate the sale. In other words, he refused to "O. K." the expressed desire of Mr. Winchell. He was willing to gamble on plaintiff's crop, even if plaintiff was not.

■ The facts herein disclose that this was not a simple consignment of the fruit to the factor to sell without instructions. The contract sets out the terms and conditions on which the goods were transferred. Each party had a right to expect from the other a compliance therewith.

■ The fact that defendant, as factor, made advances to the consignor did not give it authority to refuse to make the sale unless such sale would jeopardize such advances or destroy the lien thereof without payment. This is the doctrine taught in 11 R. C. L. 774; *Brown v. McGran*, 39 U. S. 477 (10 L. Ed. 550); *Feild v. Farrington*, 77 U. S. 141 (19 L. Ed. 923); *Heffner v. Gwynne-Treadwell*, 160 Fed. 635.

■ There is no claim in the instant cause that if defendant sold to the Duckwall Bros., Inc., at the prices

quoted the plaintiff that it would not be repaid its advances. It is no defense to say to plaintiff that if he repaid the advances he could do as he liked with the fruit. Plaintiff was entitled to have defendant carry out its contract. When he produced and brought into communication with the defendant, a buyer, at a price satisfactory to him, it was the duty of the defendant, under paragraph 18 of the contract, to consummate the sale. Defendant would have the right to withhold, from the money obtained from the sale, its advances and other items to which under the contract it was entitled.

There is some question raised regarding the ten cents a box that defendant was entitled to under paragraph 3 of the contract. Plaintiff testified that the prices quoted by Duckwall Bros., Inc., would net him $15,834.03. He received from the sale, by defendant, $12,881.79. Mr. Waterbury, manager of defendant, testified, in answer to the question, ''* * * state if you know whether or not, your accounting included all the storage and warehouse commission and one thing and another, covered by the contract, did you take that off?'' He answered, ''Yes, it was all taken off.'' It would appear that the defendant had collected all its charges including the 10 cents a box warehouse charges.

The plaintiff is not attempting to rescind the contract, but is affirming it and asking damages by reason of its breach. The cases cited in appellant's additional brief, on rescission of a contract, are not in point in the instant controversy.

Finding no error, the judgment will be affirmed.

It is so ordered.

BELT and BROWN, JJ., not sitting.

Motion to recall mandate denied October 4, 1932

ON MOTION TO RECALL MANDATE
(14 P. (2d) 626)

KELLY, J. Defendant has filed a motion to recall the mandate and for permission to move for a reconsideration of its petition for a rehearing. This motion is based upon an affidavit in which the affiant states that an error was committed in the computation of damages, which involves no question of law, but only one of arithmetic.

■ A careful reexamination of the record leads us to the conclusion that defendant is in no position to urge the question it now seeks again to present. Defendant reiterates its claim that it should be allowed a credit of ten cents per box for marketing 11,522 boxes of plaintiff's fruit. We find more than a mere arithmetical computation confronting us when we consider this belated claim.

First, there is the question of pleading. It is admitted that an account existed between plaintiff and defendant involving, not only the receipts from the sale of plaintiff's fruit but, also, advances to plaintiff by defendant and interest thereupon. It is admitted in the pleadings that defendant accounted to the plaintiff, on account of the sale of the fruit consigned by the plaintiff to the defendant, for the sum of $12,881.79. There is no allegation in defendant's amended answer to the effect that this accounting was inaccurate, erroneous, or subject to any credit. No counterclaim is pleaded in the amended answer; therefore, upon this first question, that is, the question of pleading, defendant is in no position to urge the claim here made that this accounting should be reviewed and a smaller credit given to plaintiff.

2. Second, the question of proof confronts us. Mr. H. E. Waterbury, a witness called by defendant, testified that during 1929 and 1930 he was employed by the defendant in defendant's carlot shipping division. We quote from his direct examination:

"Q. Now, from there on will you describe to the jury what transaction took place with regard to this '29 crop as to the financing and the handling of the crop and your contracts?

"A. 1929 or '30?

"Q. '30.

"A. Through the season we advanced him from time to time sums of money according to the budget which had been prepared for orchard labor, spraying material, various necessary expenses in regard to the orchard and had been advancing that money up to the first part of August—about the 25th of August at which time we got down to date.

"Q. Do you know approximately how much was owing by the plaintiff to the defendant on or about the 25th of August?

"A. Yes, sir; checking up in our office in Portland, there was something over ten thousand dollars owing at that time." (T. of T. p. 39.)

In our original opinion, speaking through Mr. Justice CAMPBELL, we quoted from the cross-examination of this witness as follows:

"Q. * * * state if you know whether or not your accounting included all the storage and warehouse commission and one thing and another covered by the contract, did you take that off?

"A. Yes it was taken off."

We now quote one further question and answer from the cross-examination of this witness:

"Q. So, when you rendered the final statement sometime in June, you had been cleaned up, commission and all?

"A. Yes."

On the question of whether defendant had received its full commission as fixed by the terms of the contract, when it accounted to plaintiff for the sum of $12,881.79, there is no other testimony in the record.

We regret to differ with the learned counsel for defendant in their argument that only an arithmetical problem is involved in the question whether defendant is entitled to a remittitur of a part of the judgment herein because of a mistake or inaccuracy in the account admittedly made by defendant to plaintiff; but we feel that we must adhere to the principle that a counterclaim, to be enforceable, must be pleaded and proved. In this case, the claim urged was not pleaded. Not only that, it was affirmatively disproved.

Motion to recall mandate and for leave to move for a reconsideration of petition for rehearing overruled.

---

ROSSMAN, J. (dissenting). The contract entitled the defendant to receive ten cents per box for "marketing services." A reading of the transcript of the evidence discloses that it was apparently conceded during the course of the trial that the defendant was entitled to that charge; the trial judge thus instructed the jury: "* * * the defendant would, in any event, be entitled to a credit of ten cents per box." Respondent's brief, after referring to the above instructions, states: "The jury, evidently, disregarded this mandate and returned a verdict for the full amount sued for." It is thus conceded that the item of ten cents per box has not been received by the respondent, although it was entitled to it. It is true that the defendant's answer does not plead this item by way of counterclaim. But since the plaintiff bases his cause of action upon the contract, and alleges "that the plaintiff has fully performed his said con-

tract,'' it was unnecessary to do more than deny this allegation. The defendant merely sought to defeat the complaint. At any rate, both the Constitution of this State (Oregon Constitution, Art. VII, section 3) and its statutes (section 1-911, Oregon Code 1930) enjoin us to disregard errors of pleading which are non-prejudicial when we can clearly see the judgment that should be entered. Moreover, I am of the opinion that the plaintiff is not entitled to any judgment whatsoever. The alleged buyer (Duckwall Bros., Inc.) which he produced was not shown by the evidence ready and willing to buy upon terms which would have reimbursed the defendant for the sums of money (more than $10,000) which it had advanced to the plaintiff. A factor has a lien upon the merchandise in his possession for the sums which he has advanced to his principal, and can not be required to surrender possession until his charges have been paid. The contract of the parties expressly recognized this lien, for it recites:

''Grower hereby mortgages above mentioned crop to Company as security for the following: (a) The repayment of the sum of money hereinabove specified to have been advanced and all moneys hereafter advanced to or for account or benefit of grower by company.''

The complaint does not even allege that the plaintiff, when he made the alleged request that the defendant should sell the apples to Duckwall Bros., was ready, willing and able to repay to the defendant the $10,000 which it had advanced to the plaintiff. It is true that the contract provides:

''If Grower shall procure a purchaser for said goods, Company shall be put in communication with said purchaser, when it shall, subject to the other terms hereof, consummate said sale on behalf of Grower.''

But no evidence was introduced capable of supporting a finding that Duckwall Bros., Inc., was "a purchaser"; that is, ready and willing to buy the apples. The evidence indicates that they were a prospect; that is, interested. Mr. Duckwall, being the individual with whom the plaintiff had discussed a possible sale of the apples, as a witness for the plaintiff, described the state to which the negotiations had gone, thus:

"I can only say this: If we had a deal in mind, that the details of that deal would have to be worked out at the time the deal was completed. But I don't know as we had any definite idea at the time as to just how that payment would be made."

Apparently the cause of action was predicated upon the theory that the above-quoted provision of the contract authorized the plaintiff to demand that the defendant, as his agent, should sell the apples to Duckwall Bros.; that when it did not make the sale it breached its duty to the plaintiff, and that the plaintiff was damaged thereby. But there is no proof of damage because no one testified to the value of the apples upon a cash sale. Mr. Duckwall testified to the price that he was paying for apples upon a deferred payment plan. Apart from his testimony, no one mentioned the value of apples.

Since the complaint did not allege that the plaintiff was ready, willing and able to discharge the defendant's lien upon the apples, the demurrer should have been sustained. Since the evidence did not disclose the value of apples nor indicate that either the plaintiff or Duckwall Bros., Inc., was willing to pay to the plaintiff a sufficient sum to discharge the defendant's lien, the plaintiff is not entitled to the judgment which he now possesses.

For the above reasons, I dissent from the opinion of the majority and hold that the petition should be allowed.