LILIENTHAL et al. v. McCORMICK et al.

McCORMICK et al. v. LILIENTHAL et al.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1902.)

No. 688.

1. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY—HOW DETERMINED.

In a suit to enforce a lien claimed to have been given by a contract, to secure advances made thereunder, and also damages for its breach, the aggregate amount of such advances and damages claimed in good faith constitutes the amount in controversy for the purpose of the jurisdiction of a federal court, and it is immaterial to such question that the contract as construed by the court gave a lien only for the advances, which were less than the jurisdictional amount.

2. SAME—DIVERSITY OF CITIZENSHIP—PARTIES TO CROSS BILLS.

Where a federal court obtains jurisdiction in a suit to enforce a lien on property, by reason of the diversity of citizenship between the complainants and defendants, such jurisdiction extends to the determination of the rights of defendants or interveners, who also assert liens on the same property, by cross bills against other of the defendants, which give them the right to contest complainants' claim, although there is no di-

---

¶ 1. Jurisdiction of circuit courts as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Shoe Co. v. Roper, 36 C. C. A. 459.

¶ 2. Supplementary and ancillary proceedings and relief in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

versity of citizenship between the parties to such cross bills, and notwithstanding the fact that the cross bills make it necessary to bring in new parties.

3. TENDER—SUFFICIENCY—EVIDENCE TO SUPPORT.

To support a plea of tender, it must be clearly shown that the tender was fairly made, that it was absolute and unconditional, and that it covered the full amount then due.

4. APPEAL—REVIEW—FINDINGS OF FACT.

Findings of fact made on conflicting evidence will not be disturbed on appeal unless it clearly appears that they are opposed to the weight of the evidence, or some obvious error or mistake is clearly shown.

5. CHATTEL MORTGAGE—CONSTRUCTION OF CONTRACT—CLAIMS SECURED.

A contract for the sale of hops to be thereafter raised provided that the purchaser should advance a part of the price when the time for picking the crop arrived, and that, in case the hops should not be delivered in accordance with the contract, such advances should be repaid on demand, with interest. It further provided that it should stand as a chattel mortgage on the entire crop of the sellers, "to secure the payment of said sums advanced, and interest, and the performance of all the provisions hereof"; and that, in case the hops should be sold thereunder, the purchaser should retain, from the proceeds, "said sums and interest and all costs," and account to the sellers for the remainder. *Held*, that such provisions could not be construed as giving the purchaser a lien for damages recoverable for the sellers' breach of the contract.

6. EQUITY JURISDICTION—LEGAL DEMAND—RIGHT TO JURY TRIAL.

A cause of action for damages for breach of a contract cannot be tried, in a suit in equity in a federal court to foreclose the contract, as a chattel mortgage securing advances made thereunder; the claim for damages being separable from that for a lien, and a legal demand upon which defendants were entitled to a jury trial unless they waived the right.

7. ATTORNEYS' FEES—ENFORCEMENT OF STIPULATION IN CONTRACT—DISCRETION OF COURT.

Where a chattel mortgage provided for attorneys' fees in case of foreclosure, but before the commencement of a suit to foreclose the same defendants offered, and subsequently paid into court, a sum nearly equal to the amount recovered, and the subsequent litigation was principally with respect to a further claim of the mortgagee as to which he was unsuccessful, the court properly refused to allow the complainants attorneys' fees.

Appeals from the Circuit Court of the United States for the District of Oregon.

For opinion below, see 86 Fed. 100.

The controversy between the parties in this case depends upon the construction to be given to the terms of the following agreement:

"Articles of agreement made this 12th day of September, one thousand eight hundred and ninety-six, between Chas. McCormick, Wong Him, Jim Lip, and Ah Tong, all of Woodburn, county of Marion, state of Oregon, parties of the first part, and Lilienthal Brothers, of the city, county, and state of New York, parties of the second part.

"The parties of the first part have bargained and sold, and by these presents do grant, sell, and convey, unto the said parties of the second part, thirty [30,000] thousand pounds [net weight] of their crop of hops, the growth of the year 1897, grown on the ranch of Chas. McCormick in Marion county, state of Oregon, of which farm 70 acres are set out in hops, and are now being by them cultivated, and which are to be harvested during the year one thousand eight hundred and ninety-seven, to have and to hold the same unto said Lilienthal Brothers, their executors, administrators, or assigns, forever. The said parties of the first part hereby agree to complete the cultivation of the said hop crop, and to harvest, cure, and bale the same in good, first-class, and workmanlike manner, and immediately thereafter, and

not later than Nov. 10th, 1897, to deliver the 30,000 pounds of the same in bales of about one hundred and eighty-five pounds each, in new 24-oz. bale cloth (seven pounds tare per bale to be allowed), at railroad whse. at Woodburn. Said hops, when delivered, are to be not the product of a first year's planting, and not affected by spraying or mold, and are to be of choice quality, and in sound condition, good color, fully matured, cleanly picked, free from vermin damage, properly dried and cured, and in good merchantable order and condition, and shall be delivered in lots of not less than ——— lot to the said parties of the second part, their agents, executors, administrators, or assigns; and the said parties of the first part further agree that this contract has preference, both as to quality and quantity, over all other contracts made as to said growth of hops, by said parties of the first part, with any other purchaser; and it is understood and agreed that said parties of the second part, or their agent, may, at any time after the execution of this agreement, have full and free access to and upon said described premises. That said parties of the first part further agree, at least ten days before baling said hops, that they will notify said parties of the second part, or their agents, in writing, of the time at which they will be in readiness to deliver said hops; which said notice shall be personally served upon said parties of the second part or their agent. It is further agreed that when said hops are delivered they may be inspected by the parties of the second part, or by an agent selected by said parties of the second part at the time of the delivery of any lot thereof, or at any time thereafter, within ten days after delivery of the entire quantity hereby bargained and sold shall have been completed, and should said hops, or any part thereof, not be delivered in the condition herein agreed upon according to the judgment of said parties of the second part, or their said agent, the said parties of the first part shall, upon demand, repay to said parties of the second part such sums of money as they may have advanced on the said crop, with interest at the rate of ten per cent. per annum from the date when advanced, and this instrument shall be a chattel mortgage on the entire crop of hops raised on the above-described land to secure the payment of said sums advanced and interest, and the performance of all the provisions hereof; and, if not paid upon demand, the said parties of the second part may forthwith, and without further notice, take possession of said hops, and sell the same, with or without notice to the parties of the first part, upon ten days' advertisement as herein provided, and out of the proceeds retain said sums and interest and all costs, including attorneys' fees, rendering the surplus, if any, to the parties of the first part. Such advertisement shall be by posting a notice describing the property to be sold, stating the time and place of sale, the amount to be made at such sale, and that the sale is made under the provisions of this agreement, and shall be posted in three public places, in the county where the sale is to take place, for ten days immediately preceding the date of sale.

"And, in consideration of the foregoing, said parties of the second part do hereby agree to pay, to said parties of the first part, the sum of seven cents per pound for each pound of hops delivered and accepted on the conditions stipulated for; that is to say, one dollar paid upon the signing of these presents, the receipt whereof by said parties of the first part is hereby acknowledged; three and one-half cents per pound for each pound of hops hereby bargained to be paid at the time of picking said hops, upon ten days' notice from said parties of the first part; and the balance, if any there may then be due, after delivery of the entire amount bargained and sold to, and acceptance by, said parties of the second part, at the time and place and in the condition as hereinbefore provided. It is further agreed that all advances made as hereinbefore provided shall bear interest at the rate of ten per cent. per annum up to the time of acceptance of all of said hops by said parties of the second part, and that the parties of the second part, through their agents, shall have the right to determine at picking time, when said advances are contemplated to be made, whether or not the growing crop at that time is in proper condition; and, if such agents of the parties of the second part shall determine that the growing crop is not in such condition, then said parties of the second part shall be released from any obligations to furnish picking money as called for in this contract. The

party of the first part shall not be liable [except to repay advances] for any shortage on delivery due to causes beyond his control. It is further agreed that the said parties of the second part may, at their option, keep the said hops insured against all risks by fire, for their full value,—that is to say, ·for an amount not less than the value herein agreed to·be paid therefor,— at the expense of the said party of the first part; such insurance to operate from the time said hops are picked, and to be in the name and for the benefit of said parties of the second part; and, in case of loss of said hops by fire before delivery and acceptance, the party of the first part shall immediately repay, to said parties of the second part, all the moneys heretofore ·advanced under this contract, with interest at the rate of ten per cent. per annum.

"In witness whereof, the said parties have hereunto set their hands and ·seals, the day and year first above written.

"Charles McCormick.

"Ah [Chinese signature] Tong.

"Wong Him.

"Jim [Chinese signature] Lip.

"Lilienthal Bros.

"H. J. Ottenheimer."

The court, after disposing of certain exceptions to the answer of de-fendants, and of divers demurrers and pleas of the respective parties herein, upon the final hearing found and decreed, among other things:

"That the complainant Albert Lilienthal is a citizen of the state of New York, .and a resident and inhabitant of the said state, and the complainant Philip N. Lilienthal is a citizen of the state of California, and a resident and inhabitant of said state, and the said Albert Lilienthal and the said Philip N. Lilienthal, at the times· mentioned in this bill of complaint, have been partners in business under the firm name of Lilienthal Brothers. That the ·defendant Charles McCormick is a citizen of the state of Oregon, and a resi-·dent and inhabitant of said state; that the defendant Wong Him is a citizen ·of the empire of China, and a resident and inhabitant at this time of the state of Oregon; that the defendant Jim Lip is a citizen of the empire of ·China, and at this time a resident and inhabitant of the state of Oregon; that the defendant Ah Tong is a citizen of the empire of China, and at this time a resident and inhabitant of the state of Oregon; and the Bank of ¯Woodburn is a corporation organized under the laws of the state of Oregon, and doing business in the said state, having its principal place of business at the town of Woodburn in the said state of Oregon, and for the purposes of the jurisdiction of this court is a citizen and inhabitant of the said state of Oregon. That the amount involved in this controversy, exclusive ·of interest and costs, is in excess of two thousand dollars." That, under the provisions of the contract, "complainants advanced and paid to the de-fendants Charles McCormick, Wong Him, Jim Lip, and Ah Tong, pursuant ·to the terms of the contract above mentioned, on the 12th day of September, 1896, the sum of one dollar, and on the 30th day of August, 1897, the sum ·of one thousand and fifty ($1,050.00) dollars, and have been ready and willing to accept and receive all the property set forth and described in the said ·contract, of the kind and character therein specified, and at the time and place therein mentioned for the delivery of the same, and to pay therefor the purchase price of the same in pursuance of the said contract. That the ·defendants Charles McCormick, Ah Tong, Wong Him, and Jim Lip have failed and refused to deliver unto the complainants Lilienthal Brothers the property which by the contract they agreed to deliver, and have given notice to the said complainants that they have abrogated and annulled the said contract in writing, and would refuse to comply with the conditions thereof, and have refused and continued to refuse to tender or to deliver to the ·complainants the hops mentioned and described in the said contract; that the thirty thousand (30,000) pounds of hops of the kind and quality mentioned and specified in the said contract were reasonably worth, at the place and time therein appointed for the delivery of the same, the sum of four thousand five.hundred ($4,500) dollars. That in the year 1897 there

was raised upon the premises described in the said agreement more than eighty thousand (80,000) pounds of hops. That the contract above mentioned. constitutes a mortgage upon all the hops raised upon the said premises, but only as security for the repayment of the sums of money advanced by the said complainants upon the said hop crop, with interest at the rate of ten; per cent. per annum from the date of such advances, and cannot be enforced as a lien to secure damages for the nonfulfillment of the contract. That at the time of filing their answer in this cause, to wit, on the 11th day of December, 1897, the defendants Charles McCormick, Wong Him, Jim Lip, and Ah Tong brought into court, and offered and tendered to the complainants Lilienthal Brothers, and deposited with the clerk of this court, the sum of one thousand and sixty-three ($1,063.00) dollars for the benefit of the complainants; that, at the time such tender was made, there was due to the complainants from the said defendants the sum of one thousand and eighty-one dollars, and the complainants Lilienthal Brothers had also expended in the costs and disbursements of this suit the sum of ———— dollars; that said tender, so made by the said defendants to the said complainants, is not a full and sufficient defense to the matters set forth in the bill of complaint."

On February 23, 1900, the defendants other than the Bank of Woodburn moved the court to dismiss the bill of complaint and certain cross bills "upon the ground that it appears from the nature of the cause as stated in the bill of complaint of said complainants, and in the pleadings, that said court could not legally give, make, or render a decree herein for an amount necessary to confer jurisdiction upon this court to entertain the said suit, and that the amount really in dispute between the parties is not sufficient to confer jurisdiction upon this court, *, * * and because the Bank of Woodburn, cross-complainant therein, and Chas. McCormick, one . of the defendants therein, are citizens of and residents and inhabitants in the state of Oregon; and upon the further ground ·that the defendant Wong Gee, named in the above-entitled cause by way of cross bill, was not a defendant in or a party to the suit commenced by the bill of complaint filed by the defendants Lilienthal Bros. against Chas. McCormick, Wong Him,. Jim Lip, and Ah Tong, and the cross-complainant Bank of Woodburn."

On October 12, 1897, the defendants, other than the Bank of Woodburn, served on complainants an offer in writing as follows:

"Woodburn, Oregon, October 12, 1897. To Lilienthal Brothers, and to H. J. Ottenheimer, your agent: You will each of you please take notice that the· hops under our contract with you bearing date September 13, 1896, to wit, thirty thousand pounds, the growth of the year 1897, was delivered at the railroad warehouse at Woodburn, Oregon, according to contract, and which said hops, * * * were inspected and accepted by you, and which said. hops you on October 10, 1897, and on October 11, 1897, each day refused, and ever since have refused and neglected, to take or pay for, or comply with your said contract; and, you having failed and refused to comply with· your said contract, we therefore elect to consider said contract to be abro-· gated and annulled, and of no force or effect, and we do hereby tender you; the sum of $1,063.00 as the money advanced and paid by you· under said contract, including interest thereon."

The record shows that this letter was sent from Gervais, Ore., by registered mail, and addressed to H. J. Ottenheimer at Salem, Ore.; that it was. mailed about 4 o'clock in the afternoon of the day it bears date, and was. received by Mr. Ottenheimer four or five days afterwards.

Cox, Cotton, Teal & Minor, for appellants Lilienthal Bros.
John H. Woodward, for appellees McCormick and others.
Fenton, Bronaugh & Muir, for appellee Bank of Woodburn.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement of facts, delivered the opinion of the court.

1. This suit was brought by Lilienthal Bros., against McCormick et al., upon the contract set out in the foregoing statement, to enjoin them from removing the hops grown upon the premises of McCormick during the year 1897, and from selling or disposing of said hops; for the appointment of a receiver to take possession of and store and take care of the same; that the contract between the parties be declared a lien upon the hops in favor of complainants to the extent of the money advanced by them to defendants, with interest, and for all damages sustained by reason of the failure of the defendants to carry out and perform their contract; and that said sums be made a specific charge upon the property, and upon the proceeds of the sale of the hops, and for all costs and disbursements, etc. The Bank of Woodburn is made a party defendant in the suit under an allegation that it claims some interest in the hops by virtue of certain contracts with the different defendants, McCormick et al., which were executed and delivered to secure the payment of several different sums of money. The Bank of Woodburn filed several cross bills setting up its claims in the premises. In addition to the findings set forth in the statement of facts, the court found divers findings as to the amounts loaned and advanced to the different defendants by the Bank of Woodburn, and the different mortgages given to the bank to secure the payment of these loans, and the amount still due, and

—"That the said sums are secured by the several mortgages given and executed to secure the respective notes as hereinbefore alleged, and constitute liens upon the property described in the several mortgages as set forth in the several cross bills of complaint filed by the cross-complainant, the Bank of Woodburn, against the several defendants as hereinbefore set forth, and should be paid out of the property mortgaged or the proceeds of the same; that the mortgage in favor of the complainants * * * Lilienthal Brothers is a first lien upon all of the property described in the bill of complaint, and in the several cross bills of complaint, and particularly described as all hops grown in the year 1897, and harvested from the farm of Charles McCormick in Marion county, Oregon, the same being about eighty thousand (80,000) pounds of hops. That the said complainants are entitled to a decree foreclosing the lien of their mortgage upon the said property, and to recover the sum of one thousand and eighty-one dollars, with interest from the 11th day of December, 1897, at the rate of ten per cent. per annum, and their costs and disbursements taxed at one hundred and fifty-five and eighty-one-hundredths dollars, less the sum of one thousand and sixty-three dollars, with interest on the same from the 11th day of December, 1897, at the rate of ten per cent. per annum; which sum was paid into this court on the last-mentioned date, to be applied upon the indebtedness due from the defendants to the complainants; but are not entitled to recover any sum as attorneys' fees in this cause; and that the lien of the complainants upon the property aforesaid is superior to the lien or liens of the cross-complainant the Bank of Woodburn upon said property, or any thereof;"

—that, subject to the lien of complainants, the Bank of Woodburn is entitled to a judgment to certain named sums, and foreclosure of its mortgage, and entered its decree accordingly. From the decree, the complainants take an appeal, and in support thereof contend that the circuit court erred in its construction of the agreement of September 12, 1896, in this: that, while it construed the agreement to be a

mortgage upon the entire hop crop, it limited the lien thereof to the amount advanced by complainants, with interest, and refused to allow complainants any sum as attorneys' fees. The defendants, other than the Bank of Woodburn, appeal from the decree, and make 11 specific assignments of error, which may be generalized as follows: That the court had no jurisdiction of the subject-matter of the controversy, either in amount claimed or as to the citizenship of the parties; and, further, because it appears that the complainants in the cross bills and one of the defendants are citizens and residents of the same state, and that the property upon which the original complainants claimed a lien was never in the custody of the court; that the tender made by defendants to complainants was valid; that no default was made by the defendants in any of the terms of the contract of September 12, 1896; that the Bank of Woodburn had a complete remedy in the state court; that neither the complainants nor the Bank of Woodburn are entitled to any relief whatever. The various objections to the jurisdiction of the court are not, in our opinion, well taken.

2. The suit was brought upon the agreement set forth in the statement of facts, and the complaint shows such a diversity of citizenship between the parties to the agreement or contract as entitled the complainants to bring the suit in the circuit court of the United States. The court obtained jurisdiction of the original suit by virtue of the diversity of the citizenship of the parties. The amount in controversy exceeded $2,000, exclusive of interest and costs, and this amount was sufficient to give the court jurisdiction of the cause. The suit was brought, not only to recover the amount of money advanced by complainants, viz., $1,051, but also for damages in the sum of $2,400, making a total of $3,451. It makes no difference, in so far as the question of jurisdiction is concerned, that the court in its decree held that the contract only afforded a security for the amount advanced, and could not be construed as giving a lien for the damages. It is the amount claimed in the bill of complaint, and not the amount recovered, that furnishes the test of jurisdiction. As was said by the court in Peeler v. Lathrop, 1 C. C. A. 93, 99, 48 Fed. 780, 786: "The amount in dispute, or matter in controversy, which determines the jurisdiction of the circuit courts in suits for the recovery of money only, is the amount demanded by the plaintiff in good faith." Gordon v. Longest, 16 Pet. 97, 104, 10 L. Ed. 900. 4 Rose's Notes on U. S. Rep. 147, and authorities there cited; Lee v. Watson, 1 Wall. 337, 339, 17 L. Ed. 557; Hilton v. Dickinson, 108 U. S. 165, 174, 2 Sup. Ct. 424, 27 L. Ed. 688; Barry v. Edmunds, 116 U. S. 550, 561, 6 Sup. Ct. 501, 29 L. Ed. 729. The record shows that the amount sued for was claimed by complainants in good faith. The court having jurisdiction of the case, it became its duty to construe the contract, and determine therefrom whether the complainants in such foreclosure suit were entitled to recover any damages which, under the terms of the contract, could be enforced as a mortgage lien upon the property. It is true that, if no suit had been brought by the complainants, the Bank of Woodburn could have brought suit in the state court to enforce its liens, and obtain full relief. But it was properly made a defendant by complainants, and, having been brought into the suit in the United

States court, it had the right to assert its claims, and seek affirmative relief by filing a cross bill for the foreclosure of its liens; and it had the right, in such suit, to litigate the question whether the complainants had any lien against the property for damages. It was the proper court to deal with the subject-matter of the litigation. It had jurisdiction to determine the controversy between complainants and the Bank of Woodburn as to the priority of their respective liens upon the property. In this case, the Bank of Woodburn was made a party defendant in order that its rights might be heard and determined. If it had not been made a party, it would have had the right to intervene. The citizenship of the Bank of Woodburn, and of Wong Gee, who was not a party to the original bill, did not deprive the court of its jurisdiction. In Osborne & Co. v. Barge (C. C.) 30 Fed. 805, 806, the court said:

"The jurisdiction of the cause of action presented by the original bill, and of the parties thereto, cannot be and is not questioned. Having acquired full and complete jurisdiction of the original cause, and the parties thereto, the court cannot be deprived thereof because another party obtains leave to intervene for the assertion of a right to the property which is the subject of the proceeding. If it be necessary for the protection of the rights of a third party that he be heard in the cause pending, he may be permitted to intervene even though the court would not have, by reason of his being a citizen of the same state with complainant, jurisdiction over an original proceeding between the same parties. Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Phelps v. Oaks, 117 U. S. 236, 6 Sup. Ct. 714, 29 L. Ed. 888."

See, also, the opinion of Mr. Justice Harlan in Jesup v. Railroad Co. (C. C.) 43 Fed. 483, 495, 496, and authorities there cited. First Nat. Bank v. Salem Capital Flour Mills Co. (C. C.) 31 Fed. 580, 583; Compton v. Jesup, 15 C. C. A. 397, 68 Fed. 263, 279, and authorities there cited; Schenck v. Peay, Fed. Cas. No. 12,450. Consolidations, cross-bills, and interventions do not oust the jurisdiction of the court in the main suit, whatever the citizenship of the parties thus brought in may be. Sioux City Terminal R. & Warehouse Co. v. Trust Co. of North America, 27 C. C. A. 23, 82 Fed. 124, 128, and authorities there cited; Morgan's L. & T. R. & S. S. Co. v. Texas Cent. R. Co., 137 U. S. 171, 201, 11 Sup. Ct. 61, 34 L. Ed. 625; Park v. Railroad Co. (C. C.) 70 Fed. 641, and authorities there cited.

3. The written offer to pay complainants the sum of $1,063, evidently made in an effort to save further costs and interest, was insufficient as a legal tender. There was no actual tender of any money. It is true that the statute of Oregon provides that an offer to pay a particular sum of money is, if not accepted, equivalent to the actual production and tender of the money; but the supreme court of that state have declared that this statute does not dispense with readiness and ability on the part of the person making the offer to pay the money at the time the offer is made. Ladd v. Mason, 10 Or. 308, 314. The evidence does not affirmatively show that the offer made covered the full amount then due. The law is well settled that there can be no valid tender of part of an entire debt. The mistake in the sum offered, if any, must be regarded as the mistake and misfortune of the defendants. Brandt v. Railroad Co., 26 Iowa, 114, 116; Patnote v. Sanders,

41 Vt. 66, 73, 98 Am. Dec. 564. The offer, as made, was conditional, based on the statement that complainants had made default in carrying out the terms of the agreement, and that the defendants had the right on their part to abrogate and annul the contract. The proofs should be clear that a tender was fairly made, and that it was absolute and unconditional. Loring v. Cooke, 3 Pick. 48, 50; Moore v. Norman, 43 Minn. 428, 434, 45 N. W. 857, 9 L. R. A. 55, 19 Am. St. Rep. 247; Perkins v. Beck, 4 Cranch, C. C. 68, Fed. Cas. No. 10,984; Thayer v. Brackett, 12 Mass. 450; Richardson v. Chemical Laboratory, 9 Metc. 42, 52; Rand v. Harris, 83 N. C. 486; Noyes v. Wyckoff, 114 N. Y. 204, 207, 21 N. E. 158. There was no legal tender in the offer contained in the letter. In 2 Greenl. Ev. § 601, the author says:

"To support the issue of a tender of money, it is necessary for the defendant to show that the precise sum, or more, was actually produced in current money, such as is made a legal tender by statute, and actually offered to the plaintiff."

See, also, Peugh v. Davis, 113 U. S. 542, 544, 5 Sup. Ct. 622, 28 L. Ed. 1127; Harvester Co. v. Hamilton, 80 Minn. 162, 83 N. W. 44; 21 Enc. Pl. & Prac. 558. The decree of the court upon this point, as to the insufficiency of the tender or payment of money into court, is clearly correct.

4. The several findings of fact contained in the decree—especially the finding that the defendants, McCormick et al., have failed and refused to deliver, "unto the complainants," the property which by the contract they agreed to deliver—will be accepted by this court as correct without any particular discussion or review of the evidence. The evidence is in many respects conflicting upon several points, and in such cases the general rule of law upon this subject is well settled that the findings of the court below upon facts will not be disturbed unless the appellate court can clearly see that it is opposed to the weight of the evidence, or unless some obvious error or mistake is clearly shown. Railroad Co. v. Ristine, 23 C. C. A. 13, 77 Fed. 58; Trust Co. v. McClure, 24 C. C. A. 64, 78 Fed. 209; Lansing v. Stanisics, 36 C. C. A. 306, 94 Fed. 380; Harding v. Hart (C. C. A.) 113 Fed. 304, 306; Crawford v. Neal, 144 U. S. 585, 596, 12 Sup. Ct. 759, 36 L. Ed. 552, and authorities there cited; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649; Warren v. Keep, 155 U. S. 265, 267, 15 Sup. Ct. 83, 39 L. Ed. 144. It is proper, however, to state in this connection that we have carefully examined the evidence upon which there is any conflict, and are of the opinion that the facts found by the court are supported by the evidence.

5. We are of opinion that the court did not err in holding that the contract could not "be enforced as a lien to secure damages for the nonfulfillment of the contract." The complainants admit that the ordinary remedy to recover damages for the breach of a contract would be an action for damages, but they contend that the words, "and the performance of all the provisions hereof," as used in the contract, necessarily imply that they were to have a lien, not only for the advances they made, but also for the damages which they sustained by reason of the failure of defendants to perform all the covenants of the contract on their part to be performed. The general rule is that, in order

117 F.—7

to constitute a mortgage, there must be a debt, and that ordinarily a mortgage is not given to secure the performance of a contract other than a contract to pay money. We do not understand complainants to deny this general proposition, but they claim that this definition is too narrow to be applied to the terms of the contract under consideration. In other words, they claim that this case is taken out of the general rule by virtue of the clause above referred to. This contention cannot, in our opinion, be sustained. The language above quoted is vague, indefinite, ambiguous, and uncertain; it must be considered in the light of the entire agreement, and, when so considered, it is not fairly susceptible of any such construction. It certainly does not directly give a lien upon the property for damages. It is reasonable to believe that, if the intention of the parties had been to give a lien, the parties would have named a specific sum to be paid "as fixed and liquidated damages" for nonperformance of the contract, and provided that complainants should have a lien upon the property for said sum. In no other way could the sale have been made in the manner provided for in the agreement. When the agreement specified that "out of the proceeds" Lilienthal Brothers should "retain said sums and interest and all costs," it meant the sums of money advanced, and the "interest and all costs." There was no sum mentioned for any damages that might otherwise arise. No lien could be given unless the language to that effect was clear, definite, and certain. As the instrument reads in its entirety, it does not give a lien for any damages. Every instrument, contract, conveyance, or mortgage must, of course, be construed, with reference to the provisions thereof, so as to carry out the true intent and meaning of the parties. It is true, as complainants claim, that an estate in lands may be conveyed for the special purpose of securing, by way of mortgage, the performance of some special act. Jones, Mortg. § 16, and authorities there cited. "But," as there said, "to define the different kinds of mortgages, and the many different rights under them, is the service attempted by a treatise on the subject." We shall not attempt to do this. In Association v. Adams, 109 U. S. 211, 214, 3 Sup. Ct. 161, 27 L. Ed. 910, cited by complainants, it was insisted that the bank was entitled to the proceeds of a certain sale because the agreement of the parties constituted a mortgage, etc. The court said:

"We are of the opinion that this contention is not well founded. While it may be conceded that no precise form of words is necessary to constitute a mortgage, yet there must be a present purpose of the mortgagor to pledge his land for the payment of a sum of money, or the performance of some other act, or it cannot be construed to be a mortgage."

The action for damages for failure to perform the conditions of the contract is separable from the lien given for failure to pay the sums of money advanced by complainants. The defendants had the right to a jury trial to settle the amount of damages, in the one case, by an action at law, while the advances made, in the other case, could be foreclosed in a suit at equity. The general principles upon this subject are fully discussed in Scott v. Neely, 140 U. S. 106, 109, 11 Sup. Ct. 712, 35 L. Ed. 358, and authorities there cited. This right in the federal courts cannot be dispensed with except by the consent of the parties entitled to it. The language of the agreement relied upon

ought not to be so construed as to impair the rights of the respective parties in this respect. Complainants could not deprive defendants of the right to have a jury trial as to the claim for damages by blending it with a suit in equity to foreclose a lien for the advances made under the contract. The supreme court, in Scott v. Neely, referring to these questions, among other things said:

"All actions which seek to recover specific property, real or personal, with or without damages for its detention, or a money judgment for breach of a simple contract, or as damages for injury to person or property, are legal actions, and can be brought in the federal courts only on their law side. Demands of this kind do not lose their character as claims cognizable in the courts of the United States only on their law side because, in some state courts, by virtue of state legislation, equitable relief in aid of the demand at law may be sought in the same action. Such blending of remedies is not permissible in the courts of the United States. * * * The debt or obligation, to secure which it is given, is stated in the instrument itself, and the only proceeding with reference to its amount is one of calculation as to the interest thereon, or as to what remains due after credit of payments; and it is only to ascertain this that a reference is made to an accountant, usually a master in chancery, and not to try the validity of the debt or obligation secured. The equitable suit is to enforce the application of the property to the purposes intended by the contract of the parties. * * * In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied by a right to the appropriation of the property of the debtor for its payment, or, to speak with greater accuracy, there must be, in addition to such acknowledged or established debt, an interest in the property, or a lien thereon created by contract, or by some distinct legal proceeding."

6. The only remaining point necessary to be noticed relates to the disallowance of counsel fees. Under all the facts, conditions, and circumstances of this case, we are unwilling to say that the court erred in refusing to allow complainants any counsel fee.

The decree of the court is affirmed, with costs on appeal to the Bank of Woodburn, appellee; the appealing parties to pay their own costs.