MID - NORTHERN OIL COMPANY *v.* J. W. WALKER, AS TREASURER, JOSEPH M. DIXON, GOVERNOR, AND C. T. STEWART, SECRETARY, OF THE STATE OF MONTANA, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 256. Argued March 9, 1925.—Decided April 13, 1925.

1. Assuming that a private corporation engaged in producing oil from public lands as lessee of the United States under the Leasing Act of February 25, 1910, is a governmental agency, means or instrumentality such that an annual license tax measured by a

percentage of the gross value of the annual production can not without the consent of Congress be imposed by the State in which the operations are conducted,—*held* that consent was given by the act, § 32, in the proviso " That nothing in this Act shall be construed or held to affect the rights of the States or other local authority to exercise any rights which they may have, including the right to levy and collect taxes upon improvements, output of mines, or other rights, property, or assets of any lessee of the United States." P. 48.

2. *Ejusdem generis* is a rule of construction, to be used to ascertain the intent of the law-makers and not to subvert it when ascertained. P. 49.

65 Mont. 414; 68 *id.* 550, affirmed.

ERROR to a judgment of the Supreme Court of the State of Montana sustaining a state license tax in a suit brought by the Oil Company to enjoin its enforcement.

*Mr. Frederick D. Anderson,* with whom *Messrs. Charles S. Thomas* and *Donald Campbell* were on the brief, for the plaintiff in error.

No license, occupation or privilege tax can lawfully be imposed by a State upon a governmental agency, means or instrumentality. The plaintiff in error, acting as a lessee of oil and gas lands from the United States, is a governmental agency, means or instrumentality. The disposal of public lands by governmental oil and gas lease is the performance of a trust by the United States and an exercise of governmental power such as cannot be controlled or interfered with by the States. The Montana tax lays such a burden or interference as to render it invalid.

. The Act of February 25, 1920, (The Leasing Law) does not by its terms grant to the State the power to impose the License Tax in question. The statute confirms the existing rights of the States. It adds nothing to them. The right to tax the governmental agency, means or instrumentality is inconsistent with the whole purpose and object of the leasing law and is not conferred

by it. The phrase " other rights " refers to property of an intangible or special nature subject to a property tax. The proviso clause in § 32 is introduced out of abundant caution to remove all doubt of the intention of Congress. Assuming the language of § 32 to be uncertain and doubtful, it cannot confer the right to tax operations of plaintiff in error. The history of the legislation shows that Congress intended the distribution of royalties to be in lieu of the extensive right of taxation belonging to the States under the public mining laws.

*Messrs. C. E. Pew, L. A. Foot,* Attorney General of the State of Montana, and *A. H. Angstman,* Assistant Attorney General, were on the brief for defendants in error.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This suit was brought by the Oil Company to enjoin the enforcement of an annual license tax imposed by a state statute (Montana Revised Codes, 1921, §§ 2397– 2408) [1] upon persons producing petroleum, etc., equal to one per centum of the gross value of the oil produced during the year. The statute, as applied to the company, is assailed as invalid, upon the ground that the company, by assignment of the original leases, is a lessee of the United States of certain public lands entered as homesteads but not yet granted by patent, upon which it.

---

[1] 2398. Oil license tax. Every person engaging in or carrying on the business of producing, within this state, petroleum, . . . must, for the year 1921, and each year thereafter, when engaged in or carrying on any such business in this state, pay to the state treasurer, for the exclusive use and benefit of the state of Montana, license tax for engaging in and carrying on such business, in an amount equal to one per centum of the total gross value of all petroleum and other mineral or crude oil produced by such person within this state during such year; . . .

is engaged in prospecting for and producing crude petroleum, under the provisions of the Leasing Act of February 25, 1920, c. 85, 41 Stat. 437, and, therefore, "is a governmental agency, means or instrumentality whose operations cannot be taxed by the state." The state supreme court held otherwise. 65 Mont. 414; 68 Mont. 550.

Whether the company under its leases is an agency, means or instrumentality of the United States, or in the absence of congressional consent would be outside the reach of state taxation, we need not stop to consider, since we are of opinion that the authority of the state exists in virtue of such consent. Section 32 (41 Stat. 450) of the act contains the following proviso: "*Provided,* That nothing in this Act shall be construed or held to affect the rights of the States or other local authority to exercise any rights which they may have, including the right to levy and collect taxes upon improvements, output of mines, or other rights, property, or assets of any lessee of the United States."

The contention on behalf of the company is that this proviso, which saves from the effect of any possible adverse construction of the act, rights of the states "which they may have," relates to, and is confirmatory of, *existing* rights only,—that is to say, rights existing when the act was passed. But we find nothing in the body of the act which, by any stretch of meaning, purports to detract from or render less certain any such preexisting rights; and, in that view, the theory advanced fails for want of material upon which to operate. It fairly cannot be supposed that Congress would indulge in the altogether idle ceremony of enacting a law to save rights which, being in no way challenged or affected, stood in no need of being saved. The more natural view, and the one we adopt, is that Congress, having provided for leasing the public lands to private corporations and persons whose

property, income, business and occupations ordinarily were subject to state taxation, meant by the proviso to say in effect that, although the act deals with the letting of public lands and the relations of the government to the lessees thereof, nothing in it shall be so construed as to affect the right of the states, in respect of such private persons and corporations, to levy and collect taxes as though the government were not concerned. In other words, the purpose of Congress was to remove altogether from the field of controversy, among other questions, the very question which is here presented, and to put beyond doubt the authority of the states to impose taxes upon lessees in respect of their property, although arising from, and in respect of their taxable rights, although exercised under, the act, without regard to the origin thereof or to the interest of the United States in the lands or leases.

Further, it is said that the enumeration of particular objects of taxation causes it to be necessary to limit the general words, " or other rights," to things of the same nature in accordance with the doctrine of *ejusdem generis;* and that, thus limited, the right or privilege of carrying on a business or following an occupation is not included. These general words follow the more particular words, " improvements [and] output of mines," and are followed by the equally general words, " property or assets," the entire clause being " improvements, output of mines, or other rights, [other] property, or [other] assets." The doctrine invoked is a rule of construction, to be used as an aid in the ascertainment of the intention of the law-makers, and not for the purpose of subverting such intention when ascertained. Here, the enumeration of tax-able things, including the general classes, property and assets, is so comprehensive that nothing remains to which the phrase in question can apply, unless to rights like the one here taxed; and to construe it as contended would,

in effect, therefore nullify it altogether. *Mason* v. *United States,* 260 U. S. 545, 553–554. No doubt, what Congress immediately had in mind was the necessity of making it clear that, notwithstanding the interest of the government in the leased lands, the right of the states to tax improvements thereon and the output thereof should not be in doubt; but the intention likewise to save the authority of the states in respect of all other taxable things is made evident by the addition of the three general categories, "other rights, property or assets." We think the proviso plainly discloses the intention of Congress that persons and corporations contracting with the United States under the act, should not, for that reason, be exempt from any form of state taxation otherwise lawful.

*Decree affirmed.*