## RAINIER NAT. PARK CO. v. MARTIN, Governor of Washington, et al.

### No. 582.

District Court, W. D. Washington, S. D.

March 4, 1937.

Hayden, Metzger & Blair, of Tacoma, Wash., for plaintiff.

G. W. Hamilton, Atty. Gen. Wash., and R. G. Sharpe, Asst. Atty. Gen. Wash., for defendants.

Robert H. Jackson, Asst. Atty. Gen. U. S., Sewall Key, Andrew D. Sharpe, and F. A. LeSourd, Sp. Assts. to Atty. Gen. U. S., and J. Charles Dennis, U. S. Atty., and Oliver Malm, Asst. U. S. Atty., both of Tacoma, Wash., for the United States as amicus curiæ.

Before HANEY, Circuit Judge, and CUSHMAN, and BOWEN, District Judges.

HANEY, Circuit Judge.

This suit was brought to obtain an injunction against defendants, as members of and constituting the Tax Commission of the State of Washington, restraining them

from making an assessment for tax against plaintiff, pursuant to the State Revenue Act of 1935 (Laws Wash.1935, p. 706). The ground is that such act is, as to plaintiff, unconstitutional and void.

On March 2, 1899, Congress "dedicated and set apart as a public park, to be known and designated as the Mount Rainier National Park, for the benefit and enjoyment of the people" certain lands located in Washington. 16 U.S.C.A. § 91. About two years later, the State of Washington passed an act providing in part: "Exclusive jurisdiction shall be, and the same is hereby ceded to the United States over and within all the territory * * * known as the Rainier National Park; saving, however, to the said state, the right to serve civil or criminal process within the limits of the aforesaid park, in suits or prosecutions for or on account of rights acquired, obligations incurred or crimes committed in said state, but outside of said park; and saving further to the said state the right to tax persons and corporations, their franchises and property on the lands included in said park: Provided, however, This jurisdiction shall not vest until the United States through the proper officer, notifies the Governor of this state that they assume police or military jurisdiction over said park." (Session Laws of 1901, c. 92, p. 192, § 1.)

By the Act of June 30, 1916, the United States assumed "sole and exclusive jurisdiction * * * over the territory embraced within the Mount Rainier National Park." The act also provided that "the right to serve civil or criminal process within the limits of the aforesaid park" and "the right to tax persons and corporations, their franchises and property, on the lands included in said park" were saved to the State of Washington. Chapter 197, § 1, 16 U.S.C.A. § 95. Section 2 of the act provided that said park "shall constitute a part of the United States judicial district for the western district of Washington." 16 U.S.C.A. § 96. It appears from the bill that the Secretary of Interior notified the then Governor of the State of Washington that the United States had accepted jurisdiction over the park area.

Congress thereafter created in the Department of the Interior "a service to be called the National Park Service," and provided: "The service thus established shall promote and regulate the use of * * * national parks * * * by such means and measures as conform to the fundamental purpose of the said parks * * * which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C.A. § 1. Congress likewise provided that the Secretary of the Interior "may also grant privileges, leases, and permits for the use of land for the accommodation of visitors in the various parks * * * but for periods not exceeding twenty years." 16 U.S.C.A. § 3.

The bill alleges that plaintiff is a West Virginia corporation, and is authorized to do business in Washington as a foreign corporation; that on April 2, 1928, the Secretary of the Interior, acting on behalf of the United States, entered into a written contract with plaintiff, a copy of which contract is attached to the bill.

Under the contract, plaintiff agreed to "establish, maintain and operate a general hotel and camping business * * * for the complete accommodation and entertainment of tourists and others"; to install and operate facilities in connection with the hotel and camping business "including laundries, barber shops, Turkish and other baths, swimming pools, and bathhouses"; to provide facilities for amusement and sports; to establish and maintain hothouses "for the purpose of propagating flowers and raising vegetables, etc., to be used in supplying the services required under this contract"; to sell photographic views of objects of interest in the park, paintings, photographic supplies, postal cards, souvenirs, curios, newspapers, magazines, periodicals, ice cream, soda water, soft drinks, tobacco and other smokers' supplies "and other supplies or conveniences for tourists."

Said contract also obligated plaintiff to "establish, maintain, and operate a general transportation service, using therefor automobiles, automobile trucks * * * and the transportation of freight and mail to and through said park * * * it being understood that this service will include the operation of * * * vehicles to, and within the Mount Rainier National Park, from Ashford, Tacoma, Seattle, and other points outside" said park.

The contract also provided that plaintiff might furnish water, electric lights, telephone and telegraph services at its own expense, on certain conditions.

Among other things, plaintiff agreed to pay certain compensation for the franchises granted by the contract.

General provisions of the contract are that accommodation or service furnished and articles sold would be in accordance with a schedule satisfactory to the Secretary; that plaintiff's employees who came in direct contact with the public should wear a uniform or badge to distinguish them as such employees; that "the exercise of the privileges conferred by this contract shall be subject to the laws of Congress governing the park and the rules and regulations promulgated thereunder, whether now in force or hereafter enacted or provided"; and " * * * (1) that satisfactory service to the public shall be the consideration of first importance and (2) that capital invested shall be entitled to a fair earning, irregularity of seasons and the otherwise generally hazardous nature of the investment to be considered in this connection."

The bill alleges that on March 13, 1933, the contract was modified with respect to the compensation plaintiff agreed to pay the United States.

It is also alleged that the contract was entered into "solely for the purpose of promoting the use and providing for the enjoyment of said park and of rendering the public service in connection with the accommodation of visitors thereto"; that "by the terms of said contract plaintiff corporation was made an agency of the United States to carry out and perform the function of the United States * * * and to discharge the obligation of the federal government to render said park available to the general public"; that "plaintiff has at no time and is not now engaged in any operations or activities within said park except as are required by the terms of said contract and necessary for the performance of the agency created and established thereby."

It appears also from the bill that the activities of plaintiff "include making sales at retail to employees, the Federal Government and to tourists and other visitors to said park, the furnishing of hotel accommodations to such employees, tourists and others, the furnishing of automobile transportation to and within the park to tourists and others and the supplying of a limited amount of electrical energy to the National Park Service or other departments or agencies of the Federal Government"; that such activities are "wholly without the legislative or judicial jurisdiction of the State of Washington." It is also alleged that plaintiff " * * * has no property except that which is devoted to and used in performance of said contract with the United States, dated April 2, 1928, and has no property outside of Mount Rainier National Park and within the jurisdiction of the State of Washington except a limited amount of office furniture and equipment, certain automobiles and auto stages used for the transportation of visitors and supplies for its operations under said contract within the park which are temporarily warehoused in Tacoma awaiting transportation to the Park."

The pertinent provisions of the 1935 Revenue Act (Laws of 1935, c. 180, p. 706) are as follows:

"Sec. 4. From and after the first day of May, 1935, there is hereby levied and there shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be, as follows: * * *

"(c) Upon every person engaging within this state in the business of making sales at retail; as to such persons, the amount of tax with respect to such business shall be equal to the gross proceeds of sales of the business, multiplied by the rate of one-quarter of one per cent. * * *

"(e) Upon every person engaging within this state in any business activity other than or in addition to those enumerated * * * as to such persons the amount of tax on account of such activities shall be equal to the gross income of the business multiplied by the rate of one-half of one per cent. This subsection includes, among others, and without limiting the scope hereof, persons engaged in the following businesses; * * * repairing * * * mechanical and educational service businesses; * * * hotel businesses. * * *

"Sec. 6. Every person engaging in activities which are within the purview of the provisions of two or more of paragraphs (a), (b), (c), (d) and (e) of section 4 shall be taxable under each paragraph applicable to the activities engaged in. * * *

"Sec. 12. In computing tax there may be deducted from the measure of tax the following items: * * *

"(f) Amounts derived from business which the State of Washington is prohibited from taxing under the constitution of this state or the constitution or laws of the United States. * * *

"Sec. 16. From and after the first day of May, 1935, there is hereby levied and there shall be collected a tax on each retail sale in this state equal to two per cent. of the selling price. * * *

"Sec. 19. The tax hereby levied shall not apply to the following sales: * * *

"(d) Sales which the State of Washington is prohibited from taxing under the constitution of this state or the constitution or laws of the United States. * * *

"Sec. 36. From and after the first day of May, 1935, there is hereby levied and there shall be collected from every person a tax for the act or privilege of engaging within this state in any one or more of the businesses herein mentioned. Such tax shall be equal to the gross operating revenue of the business, multiplied by the rate set out after the business, as follows:

"I. Railroad, express, railroad car, water distribution, light and power, telephone and telegraph businesses: three per cent; * * *

"V. Highway transportation and all public service businesses other than ones mentioned above: one and one-half per cent. * * *

"Sec. 40. In computing tax there may be deducted from the gross operating revenue the following items: * * *

"(f) Amounts derived from business which the State of Washington is prohibited from taxing under the constitution of this state or the constitution or laws of the United States."

The bill alleges that defendants have assessed against plaintiff a tax in the sum of $3,023.31, pursuant to the act, and upon plaintiff's refusal to pay such tax, defendants assessed a penalty of 10 per cent. of the amount of the tax; that defendants have threatened and are threatening to, and unless restrained and enjoined will, levy upon plaintiff's property for payment of the tax, with penalty and interest.

It is also alleged that the acts and threatened acts of defendants in connection with the assessment, and the Revenue Act of 1935, violate the Constitution of the United States and the Constitution of Washington, in various particulars, unnecessary here to set forth; and that plaintiff has no adequate remedy at law in the courts of the United States.

The prayer is in the usual form for an injunction, and for other relief.

Defendants appeared specially and moved for an order dismissing the bill, because (1) the suit is "in truth and in fact a suit against the state of Washington, of which this court * * * has no jurisdiction;" (2) the amount in controversy as to any one of the separate taxes does not exceed $3,000 exclusive of interest and costs. Defendants also filed a motion for an order requiring plaintiff to separately state its causes of action and to make the complaint more definite and certain. Defendants also filed a motion to dismiss on the grounds stated in the special appearance and (1) because the complaint does not state facts sufficient to state a cause of suit; (2) because plaintiff has a plain, speedy, and adequate remedy at law.

Defendants also filed an answer and an amended answer, from which it appears that the various taxes assessed against plaintiff were as follows:

Retail sales tax ................$2,003.79
Business and occupation tax .... 527.10
Highway transportation tax .... 491.60
Public utility, light and power tax .82

Total ....................$3,023.31

The various affirmative defenses appearing from the amended answer and relied upon by defendants will, if necessary, be discussed hereinafter. A reply was filed by plaintiff which raises questions of law, and which will be hereinafter discussed, if necessary.

On motion, the United States appeared amicus curiæ.

The matter was heard before one of the judges of Circuit Court of Appeals and two district judges. That court, one judge dissenting, held that plaintiff was "a government agency engaged in the performance of functions of the Government" and that the assessments were void.

Before findings and decree were approved and announced by that court, one of the district judges died, and another hearing was called before the present court.

## Jurisdiction

Defendants contend that since none of the four taxes alone exceeds $3,000 exclusive of interest and costs, the jurisdic-

tional amount required by 28 U.S.C.A. § 41(1) is not present, because plaintiff is not permitted to attain the jurisdictional amount by addition of the amounts involved in each cause of action. The pertinent part of the statute in question is as follows: "The district courts shall have original jurisdiction as follows: (1) * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States * * * or (b) is between citizens of different States."

The statute does not state that each cause of action must exceed $3,000 exclusive of interest and costs. Assuming that each tax gave right to a separate cause of action, the same defendants in each cause are asserting the claim against the same plaintiff in each cause. Under such circumstances, the aggregate of the claims is the amount in controversy. Baltimore & O. S. W. R. Co. v. United States, 220 U. S. 94, 31 S.Ct. 368, 55 L.Ed. 384; Lilienthal v. McCormick (C.C.A.9) 117 F. 89, 95, 54 C.C.A. 475; Provident Mut. Life Ins. Co. v. Parsons (C.C.A.4) 70 F.(2d) 863; Yates v. Whyel Coke Co. (C.C.A.6), 221 F. 603, 137 C.C.A. 327; Heffner v. Gwynne-Treadwell Cotton Co. (C.C.A.8) 160 F. 635; Kimel v. Missouri State Life Ins. Co. (C.C.A.10) 71 F.(2d) 921. Therefore, in the instant case, the amount in controversy exceeds $3,000 exclusive of interest and costs.

Defendants originally contended that the suit was in reality against the state of Washington, and therefore this court had no jurisdiction. In the briefs submitted to us, defendant makes no mention of this point, and we therefore treat it as abandoned.

### Territory Within Which Taxes Are Applicable.

Plaintiff contends that the revenue act in question, by its terms, was intended to and does apply only within the State of Washington; that the park is not "within" such state; and therefore the act has no application to plaintiff.

As seen above, the retail sales tax is applicable to "each retail sale in this state"; the business and occupation tax is levied upon persons engaged in the business of making sales at retail within this state, and upon every person engaging in any business activity other than or in addition to those enumerated "within this state"; the highway transportation tax is levied on persons engaged in the business of highway transportation "within this state"; and the public utility, light, and power tax is levied upon persons engaging in the businesses of water distribution, light and power, telephone and telegraph businesses "within this state."

The terms "in this state" and "within this state" as here used obviously mean within the geographical limits of the state. The park is within those limits, and the area comprising the park is not by such terms excluded from the other areas where the tax is obviously applicable.

Plaintiff contends that by the act of cession the state divested itself of all jurisdiction over the area; that a state may not tax sales made, or the engaging in business at a place, beyond the jurisdiction of the state. Defendants seem not to controvert this general statement. The point controverted, however, is whether or not the state by the act of cession, retained jurisdiction to impose the taxes herein involved. The reservation in the act of cession saved to the state "the right to tax persons and corporations, their franchises and property on the lands included in said park." At the time of the enactment of this act, the only tax permitted by the State Constitution was a property tax.

In line with this argument, plaintiff contends that the reservation in the act of cession saved to the state only the right to tax which it could then lawfully use; that since the only right of taxation which the state had at that time was property taxation which was reserved, but that the state could not reserve rights which it did not have.

In 1 Cooley Taxation (4th Ed.) 69, § 4, it is said: " * * * Whether a tax be considered as imposed on the person or on the property, it is clear that all taxes are imposed either upon the one or the other."

The reservation in the act of cession saved to the state "the right to tax persons and corporations, their franchises and property" and saved the right to the state to levy all kinds of taxes therein. The present taxes are not property taxes, but are excise taxes. State ex rel. Stiner v. Yelle, 174 Wash. 402, 25 P.(2d) 91; Rainier National Park Co. v. Henneford, 182 Wash. 159, 161, 45 P.(2d) 617. Such taxes are therefore levied against the corporation, the right to tax which was spe-

cifically reserved by the act of cession. We believe the state had the power to reserve the broad right of taxation to be thereafter used, when, as, and if the people of the state sanctioned the use thereof by an amendment to the State Constitution. Mid-Northern Oil Co. v. Walker, Treas. of Montana, 268 U.S. 45, 48, 45 S.Ct. 440, 69 L.Ed. 841.

### Validity of the Taxes.

Plaintiff's chief contention is that it is an instrumentality of the United States and immune from taxation.

The principle of immunity is shown by the following quotation from Indian Motocycle Co. v. U. S., 283 U.S. 570, 575, 51 S.Ct. 601, 602, 75 L.Ed. 1277: "It is an established principle of our constitutional system of dual government that the instrumentalities, means and operations whereby the United States exercises its governmental powers are exempt from taxation by the states, and that the instrumentalities, means and operations whereby the states exert the governmental powers belonging to them are equally exempt from taxation by the United States. This principle is implied from the independence of the national and state governments within their respective spheres and from the provisions of the Constitution which look to the maintenance of the dual system."

Assuming, without deciding, that plaintiff is an instrumentality of the United States, still we are of the opinion that authority of the state to levy the taxes herein imposed exists by virtue of congressional consent. When Congress adopted the act assuming sole and exclusive jurisdiction over the territory embraced in the park, it specifically saved to the state "the right to tax persons and corporations, their franchises and property, on the lands included in said park." No exception was made with respect to the right to tax, and under the plain words of the statute, the right exists to tax corporations regardless of their relationship to the federal government. We are unable to distinguish Mid-Northern Oil Co. v. Walker, Treas. of Montana, supra, and the principle there announced we believe to be controlling. That case was followed in General Petroleum Corporation v. County of Kern, 273 U.S. 640, 47 S.Ct. 97, 71 L.Ed. 817. We conclude that plaintiff is not exempt from taxation for the reason urged, which is that it is an instrumentality of the federal government.

Plaintiff relies on the statement in Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 202, 26 S.Ct. 36, 37, 50 L.Ed. 150, 4 Ann.Cas. 493, where it is said that where the taxing authority levies a tax, it is upon the assumption that an equivalent is rendered to the taxpayer "in the protection of his person and property, * * * or in the creation and maintenance of public conveniences in which he shares," and that if the taxing power is in no position to render these services or benefits "and such property be wholly within the taxing power of another state," then the tax is a taking of property without due process of law. Literally, plaintiff does not come within the statement, for the bill shows that plaintiff has within the jurisdiction of the state "a limited amount of office furniture and equipment, certain automobiles and auto stages * * * and supplies * * * temporarily warehoused in Tacoma awaiting transportation to the Park." Also defendants alleged in the amended answer that plaintiff maintains a street floor office in the City of Tacoma "wherein plaintiff's general accounts are kept, reservations and information relating to the plaintiff's accomodations [accommodations] in the Park are furnished to the Public, all purchases of materials and supplies for use by plaintiff in the Park and elsewhere are made, and some of the contracts relating to construction of improvements and extensions are made." It is also alleged in the amended answer that plaintiff maintains in the City of Tacoma a garage for the use of its stages, trucks, and other motor vehicles. Plaintiff in its amended reply admits these allegations but alleges that such activities are only incidental and carried on pursuant to its contract with the United States. An affidavit of the general manager of plaintiff and filed on plaintiff's behalf also shows that plaintiff has office furniture and equipment in the cities of Tacoma and Seattle, and vehicles and supplies temporarily warehoused in Tacoma.

In State ex rel. Stiner v. Yelle, supra, 174 Wash. 402, 408, 25 P.(2d) 91, the Supreme Court of Washington stated in effect that the basis of the taxes imposed is the protection given by the police power of the state to the business or occupations upon which the excises are imposed. Plaintiff states that such protection can be given to it only by the United States, but the fact remains that it has property outside the park in the state, and uses

portions of the highway system of the state. The statement in Union Refrigerator Transit Co. v. Kentucky, supra, is qualified later in the case, when it is said that subject to certain exceptions, not here applicable, "the rule is that in classifying property for taxation, *some* benefit to the property taxed is a controlling consideration, and a plain abuse of this power will sometimes justify a judicial interference." (Italics supplied.)

As applied to the instant case plaintiff does receive *some* benefit with respect to the property specified. Further it is qualified to do business in the state, and as such could take advantage of the protection afforded. Simply because it does not take advantage of such protection is no reason for declaring a tax void, when the protection is available.

■ Plaintiff specifically attacks the validity of the retail sales tax. Section 21 of the Revenue Act provides that the tax shall be paid by the buyer to the seller, but if the seller fails to collect the tax, he is personally liable therefor. In Morrow v. Henneford, 182 Wash. 625, 633, 47 P.(2d) 1016, 1020, the court said: "Here, the duty of paying the tax is imposed upon the buyer; its collection and transmittal to the state upon the seller. It is within the legitimate power of the Legislature to impose the duty of collecting upon the retailer as a reasonable regulation of his business." But, argues plaintiff, under Standard Oil Co. v. California, 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775, the State of Washington has no power to regulate business in the park where the sales take place, because of its cession of jurisdiction to the United States.

In Standard Oil Co. v. California, supra, 291 U.S. 242, 244, 54 S.Ct. 381, 382, 78 L.Ed. 775, where a tax on gasoline delivered on a military reservation was involved, the court said: "The state reserved to herself no power whatever in respect of taxation." That case is not, therefore, controlling.

■ When the state reserved the right to tax, it also reserved the right to collect or enforce the tax. The former without the latter would be an empty gesture, which is not the purpose of the reservation. If the collection or enforcement incidentally constituted a regulation of plaintiff's business, it was valid, nevertheless, if the means adopted for the collection or enforcement are reasonable. It has long been held that the imposition of the duty to collect the tax upon a person, and thus constitute such person an agent of the state, is a reasonable means for collection of the tax. See: First Nat. Bank of Aberdeen v. Chehalis County, 166 U.S. 440, 17 S.Ct. 629, 41 L.Ed. 1069; Citizens' Nat. Bank v. Kentucky, 217 U.S. 443, 451, 30 S.Ct. 532, 54 L.Ed. 832; Des Moines Bank v. Fairweather, 263 U.S. 103, 111, 44 S.Ct. 23, 25, 68 L.Ed. 191. See, also, Pierce Oil Corporation v. Hopkins, 264 U.S. 137, 44 S.Ct. 251, 68 L.Ed. 593; Clement National Bank v. Vermont, 231 U.S. 120, 34 S.Ct. 31, 58 L.Ed. 147.

■ Other grounds of unconstitutionality are urged in the bill, but are not relied upon in plaintiff's brief. We therefore treat them as abandoned. In view of our conclusion, it is unnecessary to consider the affirmative defenses of defendants.

The motion to dismiss the bill for failure to state facts sufficient to constitute a cause of suit is well taken, and must be sustained.

BOWEN, District Judge, concurs.

CUSHMAN, District Judge (dissenting).

For the reasons stated and conclusions reached in the opinion filed herein August 24, 1936, I dissent from the opinion of the majority of the court, in so far as it holds valid the tax upon gross proceeds of retail sales made and gross income of business carried on within Rainier National Park pursuant to a service which plaintiff had obligated itself to the United States to perform in the accomplishment of the Government's purpose with relation to Rainier National Park.

The Supreme Court has, since the filing of such first opinion, again considered the question of taxation by a state of an instrumentality employed by the United States in the accomplishment of a governmental purpose. People of State of New York ex rel. Rogers v. Mark Graves et al., 57 S.Ct. 269, 81 L.Ed. ——, decided January 4, 1937.

Mid-Northern Oil Co. v. Walker, Treas. of Montana, 268 U.S. 45, 45 S.Ct. 440, 69 L.Ed. 841, which the majority in the present case hold to be controlling, was a case where the congressional enactment construed provided: "Nothing in this act [said sections] shall be construed or held to affect the rights of the States or other

local authority to exercise any rights which they may have, including the right to levy and collect taxes upon \* \* \* output of mines." (41 Stat. 450, 30 U.S.C. A. § 189).

The tax involved was one upon the "total gross value of *crude oil produced.*" In so far as the *thing* made subject to the tax was concerned, the language of the statute in that case was more express and specific than the words now construed, as they occur in section 1, c. 92, p. 192, Session Laws of the State of Washington 1901 and section 1 of the Act of June 30, 1916, c. 197, 39 Stat. 244 (title 16 U.S.C.A. § 95), which words are: "and saving further to the said State the right to tax persons and corporations, their franchises and property, on the lands included in said park."

The foregoing words of these statutes should, if possible, be construed so as not to confer upon the state the power to tax a governmental agency, which can be done by construing them as referring to those "persons, corporations, their franchises and property" not primarily engaged in the accomplishment of the Government's purpose of devoting the park to enjoyment by the public "in such manner and by such means as will conserve the scenery, natural and historic objects therein and leave them unimpaired for the enjoyment of future generations." So construed, effect is given to the rule of statutory construction that the United States is not bound by the general language of a statute—that the sovereign authority is not bound by statute unless named therein, if the statute tends to restrain the powers, rights or interests of the sovereign. United States v. Herron, 20 Wall. (87 U.S.) 251, 262, 263, 22 L.Ed. 275; Guarantee Title & Trust Co. v. Title Guaranty Co., 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706.

The case of Mid-Northern Oil Co. v. Walker, Treas. of Montana, 268 U.S. 45, 45 S.Ct. 440, 69 L.Ed. 841, is further to be distinguished in that in that case there was no contention as to the *thing* which Congress had consented should be taxed. The controversy was over the manner in which it should be taxed. The consent of the Government having been expressly given to the taxation of this *thing*—the output of mines—there being no question made but that *"crude oil produced"* was such "output" (see title 30 U.S.C.A. § 101), there was no reason for construing the statute as to the manner of taxing such *thing* in any different manner from that which would otherwise obtain, for, other than through such *thing*, there was no relation in any way to a governmental agency.